**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**Baltimore Division**

| | |
|---|---|
| Ron L. Lacks, Personal Representative of the Estate of Henrietta Lacks, | |
| Plaintiff, | |
| v. | Case No. 1:23-cv-2171 |
| Ultragenyx Pharmaceutical, Inc., | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

STANDARD OF LAW ............................................................................................................... 3

ARGUMENT ............................................................................................................................ 3

    I.      Section 5-204 is invalid under the Commerce Clause. ................................................ 4

           a.    Section 5-204 is invalid because it expressly discriminates against interstate commerce. .................................................................................................. 4

           b.    Section 5-204 is invalid because the interest being advanced by the statute does not outweigh the burden imposed on interstate commerce. ................... 9

    II.    Absent Section 5-204, the statute of limitations bars Plaintiff's claim................... 12

           c.    Public records show that Plaintiff's claim accrued when Ultragenyx was conferred access to HeLa-related materials more than three years ago. ....... 12

           d.    Plaintiff had notice that businesses were in possession of HeLa-related materials long before the limitations period. ................................................. 15

    III.   If the Court denies this motion, it should certify its order for immediate interlocutory appeal under 28 U.S.C. § 1292(b). ............................................................ 17

CONCLUSION ....................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Alday v. Tecphy Div. Firminy*, 182 F.3d 906 (Table),
   1999 WL 374124 (4th Cir. 1999). .............................................................................. 10,11

*Alday v. Tecphy Div. Firminy*,
   10 F. Supp. 2d 562 (D.S.C. 1998) ................................................................................... 10

*Anderson v. Kimberly-Clark Corp.*,
   570 F. App'x 927 (Fed. Cir. 2014) ................................................................................. 16

*Aphena Pharma Sols.-Maryland LLC v. BioZone Lab'ys, Inc.*,
   912 F. Supp. 2d 309 (D. Md. 2012) ............................................................................... 12

*Benak ex rel. All. Premier Growth Fund v. All. Capital Mgmt. L.P.*,
   435 F.3d 396 (3d Cir. 2006) .......................................................................................... 18

*Bendix Autolite Corp v. Midwesco Enterprises, Inc.*,
   486 U.S. 888 (1988) ................................................................................................. *passim*

*Bottineau Farmers Elevator v. Woodward-Clyde Consultants*,
   963 F.2d 1064 (8th Cir. 1992) ..................................................................................... 9,10

*Brown–Forman Distillers Corp. v. New York State Liquor Auth.*,
   476 U.S. 573 (1986) ........................................................................................................ 7

*Burnham v. Superior Court of Cal.*,
   495 U.S. 604 (1990) ...................................................................................................... 11

*Butler v. DirectSAT USA, LLC*,
   307 F.R.D. 445 (D. Md. 2015) ...................................................................................... 18

*BYD Co. v. Alliance for American Manufacturing*,
   554 F. Supp. 3d 1 (D.D.C. 2021) .................................................................................. 16

*Cadles of Grassy Meadows II, L.L.C. v. Goldner*,
   3:06-CV-1542-M, 2007 WL 1701839 (N.D. Tex. June 12, 2007) ............................. 12,13

*Garber v. Menendez*,
   888 F.3d 839 (6th Cir. 2018) ...................................................................................... 11,12

*Goodman v. Archbishop Curley High Sch., Inc.*,
   195 F. Supp. 3d 767 (D. Md. 2016) .............................................................................. 19

*Guyton v. J.M. Manuf., Inc.*,
    894 F. Supp. 252, (D.S.C. 1995) ................................................................. 13

*Hernandez v. Sutter West Capital*,
    No. C 09-03658 CRB, 2010 WL 3385046 (N.D. Cal. Aug. 26, 2010) .......................... 16

*Ibarra v. United States*,
    120 F.3d 472 (4th Cir. 1997) ................................................................. 6

*In re Human Genome Sciences Inc. Sec. Litig.*,
    933 F. Supp 2d 751 (D. Md. 2013) ............................................................ 18

*In re Microsoft Corp. Antitrust Litig.*,
    274 F. Supp. 2d 741 (D. Md. 2003) .......................................................... 19

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ......................................................................... 11

*Jason v. Nat'l Loan Recoveries, LLC*,
    227 Md. App. 516 (2016) ..................................................................... 17

*Juzwin v. Asbestos Corp.*,
    Ltd., 900 F.2d 686 (3d Cir. 1990) ..................................................... 8,9,19

*KBC Asset Mgmt. NV v. DXC Tech. Co.*,
    19 F.4th 601 (4th Cir. 2021) ................................................................ 15

*Lynn v. Monarch Recovery Mgmt.*,
    Inc., 953 F. Supp. 2d 612 (D. Md. 2013) ................................................... 18,19

*Lyons v. PNC Bank, N.A.*,
    618 F. Supp. 3d 238 (D. Md. 2022) ........................................................... 6

*Maine v. Taylor*,
    477 U.S. 131 (1986) .......................................................................... 7

*McDonald v. Mabee*,
    243 U.S. 90 (1917) .......................................................................... 11

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009) ......................................................................... 19

*Pennoyer v. Neff*,
    95 U.S. 714 (1877) .......................................................................... 11

*Pike v. Bruce Church*,
    Inc., 397 U.S. 137 (1970) ................................................................. 7,11

*Pike v. Wells Fargo Bank, N.A.*,
   No. 7:20-cv-00219, 2022 WL 1196694 (E.D.N.C. Apr. 21, 2022) ................................... 6

*Porter v. GreenPoint Mortg. Funding, Inc., No. DKC–11–1251, 2011 WL 6837703*
   (D. Md. Dec. 28, 2011) ..................................................................................... 17

*PSINet, Inc. v. Chapman*,
   362 F.3d 227 (4th Cir. 2004) ............................................................................ 12

*Rademeyer v. Farris*,
   284 F.3d 833 (8th Cir. 2002) ............................................................................ 13

*Ross v. O'Neal*,
   525 F. App'x 600 (9th Cir. 2013) ...................................................................... 10

*Russo v. Ascher*,
   76 Md. App. 465 (1988) .................................................................................... 17

*Tani v. Washington Post*,
   No. PJM 08-1130, 2009 WL 8652384 (D. Md. June 18, 2009) ....................................... 18

*United States ex rel. Michaels v. Agape Senior Cmty., Inc.*,
   848 F.3d 330 (4th Cir. 2017) ............................................................................ 18

*Turner v. Smalis*,
   622 F. Supp. 248 (D. Md. 1985) ................................................................... 5,11,19

*Wyne v. Medo Industries, Inc.*,
   2004 WL 3217860 ........................................................................................... 18

*Wyoming v. Oklahoma*,
   502 U.S. 437 (1992) ......................................................................................... 7

*Yamaha Motor Corp. v. Jim's Motorcycle, Inc.*,
   401 F.3d 560, 569-573 (4th Cir. 2005) ............................................................... 11

**Statutes**

28 U.S.C. § 1292 ............................................................................................. 18

Md. Code Ann., Cts. & Jud. Proc. § 5-204 (West).............................................. *passim*

1937 Laws of *Md. ch. 502*, § 122 ...................................................................... 11

**Other**

Fed. R. Evid. 201 ............................................................................................ 14

Fed. R. Civ. P. 12 ............................................................................................ 18

1 Weinstein's Evidence Manual § 4.02 (2021) ..................................................................... 18

16 Charles Alan Wright et al., Federal Practice and Procedure § 3931 (3d ed. 2008)............ 19

## INTRODUCTION

Ultragenyx, an out-of-state corporation not alleged to have any physical facilities or management functions in Maryland, currently finds itself deprived of a limitations defense available to in-state corporations because it is not registered in Maryland. This is a consequence of Section 5-204 of the Maryland Code on Courts and Judicial Proceedings. A vestige of a time before nationwide long-arm service, Section 5-204 states that out-of-state corporations "may not benefit from any statute of limitations in an action at law or suit in equity" if engaged in "intrastate or interstate or foreign business in the State without having registered." Based on this statute and the fact Ultragenyx is not registered in Maryland, this Court ruled Ultragenyx could not raise a limitations defense at the motion to dismiss stage. ECF 46. This violates the Commerce Clause.

The Commerce Clause prohibits a state from conditioning a limitations defense on corporate registration, especially where—as here—a party can be served through a long-arm statute. In *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, the Supreme Court ruled unconstitutional an Ohio statute that tolled the statute of limitations for out-of-state entities that had not designated an agent in the state. 486 U.S. 888, 890 (1988). The Court explained that the Ohio statute discriminated against out-of-state corporations and was per se unconstitutional as well as unnecessary to vindicate a state interest given the existence of Ohio's long-arm statute. *Id.* at 894. Courts have since applied *Bendix* to strike down similar statutes or construe them as inapplicable where, as here, a defendant was amenable to long-arm service.

Respectfully, this Court must do the same. It must either find Section 5-204 unconstitutional or construe it only to apply where a defendant was not amenable to long-arm service. Either way: Section 5-204 cannot bar Ultragenyx access to Maryland's statute of limitations, which bars this suit.

## BACKGROUND

Ultragenyx—a California-based corporation that specializes in developing treatments for rare and ultrarare diseases—is being sued for allegedly using HeLa cells (a widely available, legal resource that has been in the public domain for the better part of a century) in its work.

Plaintiff filed his complaint against Ultragenyx on August 10, 2023, and corrected the filing on August 15, 2023. ECF 1, 3. Plaintiff served Ultragenyx by certified mail at 8:01 a.m. on August 28, 2023. ECF 5. On September 15, 2023, Ultragenyx moved to dismiss under Rule 12(b)(6). ECF 6. The motion rested primarily on Maryland's statute of limitations, citing the vast public record of Plaintiff's knowledge of the commercial use of HeLa cell and delay in pursing litigation. *Id.* at 20.

Plaintiff's opposition brief argued that, under Section 5-204, Ultragenyx was not permitted to assert a limitations defense. ECF 21. But Plaintiff's brief failed to discuss *the* case of this Court interpreting Section 5-204—*Turner v. Smalis*, 622 F. Supp. 248, 254 (D. Md. 1985). On November 17, 2023, Ultragenyx filed its reply brief, discussing *Turner*, especially this Court's concern in *Turner* that Section 5-204 could violate the Commerce Clause if its application were not significantly restricted. ECF 37 at 12-13.

On May 20, 2024, the Court denied Ultragenyx's motion. ECF 46. The Court did not reach Ultragenyx's limitations defense. It instead found that Ultragenyx was barred at the motion to dismiss stage from raising a limitations defense by Section 5-204 because it was an out-of-state corporation and had not registered in Maryland. *Id.* at 16. The Court's ruling did cite *Turner*, but it did not address the constitutionality of Section 5-204. That, now, is the focus of this motion.

## STANDARD OF LAW

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A Rule 12(c)

motion is assessed under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Lyons v. PNC Bank, N.A.*, 618 F. Supp. 3d 238, 241 (D. Md. 2022). Thus, the court must "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). But the factual allegations of the complaint, assumed to be true, "must be enough to raise a right to relief above the speculative level[.]" *Lyons*, 618 F. Supp. 3d at 241 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A defendant may raise a Rule 12(c) motion after a Rule 12(b)(6) motion," when "the defendant produces legal authority and/or evidence in response to the court's [motion to dismiss] decision," and "dismissing the claim will save the parties' and the court's resources." *Pike v. Wells Fargo Bank, N.A.*, No. 7:20-cv-00219, 2022 WL 1196694, at *2 (E.D.N.C. Apr. 21, 2022) (citations and quotations omitted).

## ARGUMENT

Section 5-204 cannot bar Ultragenyx from a limitations defense under the Commerce Clause. Controlling Supreme Court precedent requires that this Court either find Section 5-204 per se unconstitutional or construe Section 5-204 to apply only where a defendant was not amenable to long-arm service. Either path ends with Section 5-204 inapplicable to Ultragenyx, which was easily served in this case. And, with Section 5-204 properly excised from this case, the Court should now reach the merits of Ultragenyx's limitations defense and dismiss this suit with prejudice. If this Court declines to dismiss the suit, it should certify its order for interlocutory appeal because of the serious constitutional questions raised by this motion.

### I.    Section 5-204 is invalid under the Commerce Clause.

The law is clear: where long-arm service is available, states may not condition out-of-state corporations' access to statutes of limitations on registration without violating the Commerce Clause.

When a state statute is challenged under the Commerce Clause, the Supreme Court has prescribed two alternative approaches to determine whether the statute is valid. *Brown–Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 578 (1986). The first approach, known as the "per se" rule, applies "[w]hen a state statute clearly discriminates against interstate commerce," and requires "strik[ing] down unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism." *Wyoming v. Oklahoma*, 502 U.S. 437, 454–55 (1992) (internal quotation marks and citations omitted). "Indeed, when the state statute amounts to simple economic protectionism, a virtually *per se* rule of invalidity has applied." *Id.* The second approach, known as "*Pike* balancing," applies where a statute has only indirect or incidental effects on interstate commerce and regulates evenhandedly, and in those cases the statute will be upheld unless the burden on interstate commerce is clearly excessive in relation to local benefits. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). Section 5-204 fails under both approaches.

> a. **Section 5-204 is invalid because it expressly discriminates against interstate commerce.**

Here, the per se rule applies because the statute expressly discriminates against interstate commerce. Section 5-204 reads, in relevant part:

> A foreign corporation . . . required by law to qualify or register to do business in the State . . . , may not benefit from any statute of limitations in an action at law or suit in equity: . . . [i]nstituted while the foreign corporation . . . is doing intrastate or interstate or foreign business in the State without having qualified or registered.

This language expressly discriminates against "foreign corporation[s]," subjecting them to different treatment from Maryland corporations. Thus, Section 5-204 is subject to heightened scrutiny and is invalid unless it serves a legitimate local purpose that could not be served as well by available nondiscriminatory means. *Brown-Forman*, 476 U.S. at 579; *Maine v. Taylor*, 477 U.S. 131, 138 (1986).

It does not.  Courts starting with the Supreme Court have found similar—but *less* discriminatory—statutes invalid under the per se rule.

In 1988, the Supreme Court addressed such a statute in a contract dispute between Bendix Autolite and Midwesco Enterprises—an Illinois corporation—filed in the Northern District of Ohio.  *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888, 890 (1988).  Midwesco asserted a limitations defense, and Bendix cited a state law that tolled the statute of limitations for claims against foreign corporations during any period for which they did not have an in-state agent for service of process.  *Id.* at 890 nn. 1 & 2.[1]  The Supreme Court held that the Ohio statute violated the Commerce Clause under both the per se and balancing standards.  *Id.* at 892-94.  The Court wrote that it could readily invalidate the statute under the per se rule by simply finding it "to be a discrimination that invalidates without extended inquiry."  486 U.S. at 891.[2]  In other words,

---

[1] The relevant statutes read, in relevant part:

> When a cause of action accrues against a person, if he is out of the state, has absconded, or conceals himself, the period of limitation for the commencement of the action . . . , does not begin to run until he comes into the state or while he is so absconded or concealed. After the cause of action accrues if he departs from the state, absconds, or conceals himself, the time of his absence or concealment shall not be computed as any part of a period within which the action must be brought.

Ohio Rev. Code Ann. § 2305.15 (Supp.1987).

> Every foreign corporation for profit that is licensed to transact business in this state, and every foreign nonprofit corporation that is licensed to exercise its corporate privileges in this state, shall have and maintain an agent, sometimes referred to as the 'designated agent,' upon whom process against such corporation may be served within this state.

Ohio Rev. Code Ann. § 1703.04.1 (1985).

[2] The Court then also "cho[se]" to apply *Pike* balancing, "to demonstrate that its legitimate sphere of regulation is not much advanced by the statute while interstate commerce is subject to substantial restraints."  486 U.S. at 891.  The statute also failed under that more generous rubric.

because the statute was discriminatory on its face against out-of-state corporations, it was facially invalid.

Many federal courts have since applied *Bendix* to strike down or significantly narrow similar state statutes.

In *Juzwin v. Asbestos Corp., Ltd.*, 900 F.2d 686 (3d Cir. 1990), the Third Circuit applied *Bendix* in striking down a New Jersey tolling statute. The statute excluded from a statute of limitations calculation the period during which an out-of-state corporation was not registered or represented by an agent in New Jersey. *Id.* (quoting N.J. Stat. Ann. § 2A:14-22).[3] The defendant, an out-of-state corporation, was not registered and did not have an agent in New Jersey. *Id.* The Third Circuit began by noting that the tolling statute discriminated on its face against out-of-state corporations, and thus would receive heightened scrutiny. *Id.* at 689. The court then applied

---

"Although statute of limitations defenses are not a fundamental right," the Court wrote, "it is obvious that they are an integral part of the legal system and are relied upon to project the liabilities of persons and corporations active in the commercial sphere." *Id.* at 893. The Court then found that "Ohio cannot justify its statute as a means of protecting its residents from corporations who become liable for acts done within the State but later withdraw from the jurisdiction, for it is conceded by all parties that the Ohio long-arm statute would have permitted service on Midwesco throughout the period of limitations." *Id.* at 894. A significant basis for this finding was that, in Ohio, registration subjected a corporation to general jurisdiction. Id. at 893. This is not the case in Maryland. *Tyler v. Gaines Motor Lines, Inc.*, 245 F.Supp.2d 730, 732 (D. Md. 2003). Thus, the *Pike* balancing analysis would be different here than in *Bendix*, but would lead to the same outcome, because Section 5-204 has no local value at all. *See infra* at Part I(b).

[3] The New Jersey statute read, in relevant part:

> [I]f any corporation . . . not organized under the laws of this State, against whom there is such a cause of action, is not represented in this State by any person or officer upon whom summons or other original process may be served, when such cause of action accrues ... the time or times during which . . . such corporation or corporate surety is not so represented within this State shall not be computed as part of the periods of time within which such action is required to be commenced by the section. . . .

N.J.Stat.Ann. § 2A:14–22 (West 1987).

*Bendix* in striking down the statute under the per se test as well as the balancing test, like in *Bendix*. *Id.* at 690.  The court noted that, although there is a state interest in assisting New Jersey residents in pursuing claims against foreign corporations, the statute provided for tolling even where the defendant was successfully served outside of the state under the long-arm statute—"a relatively simple means of promptly effecting service of process on most foreign corporations." *Id.* at 690-91.  Thus, the court found the statute could have been more narrowly drawn to only toll the limitations period where long-arm service could not be effectuated despite diligent efforts, and held the statute unconstitutional.  *Id.* at 690.[4]

In *Bottineau Farmers Elevator v. Woodward-Clyde Consultants*, the Eighth Circuit struck down a North Dakota tolling statute "because it force[d] a non-resident defendant to choose between being physically present in the state for the limitations period or forfeiting the statute of limitations defense."  963 F.2d 1064, 1074 (8th Cir. 1992).  "As in *Bendix*," the court wrote, "the state's interest in assisting its residents in litigating against non-resident defendants, *when long-arm service of process is available*, cannot justify the imposition of a greater burden on non-residents than residents."  *Id.* (emphasis added).

In *Ross v. O'Neal*, the Ninth Circuit summarily held a California tolling statute unconstitutional as applied because it "imposes a substantial burden on interstate commerce." 525 F. App'x 600, 602 (9th Cir. 2013).  The case involved allegations against NBA player Shaquille O'Neal, who had been out of the state of California due to his employment by a number of different basketball teams during the period at issue.  *Id.*  Citing *Bendix*, the court noted that "California's

---

[4] The court's balancing analysis relied on the fact that the New Jersey tolling statute might subject a registered corporation to general jurisdiction (an unresolved question in that state).  900 F.2d at 691-92.

interest in ensuring Ross's ability to vindicate any claim against O'Neal is minimal because Ross could have served O'Neal pursuant to California's long-arm statute." *Id.*

The Fourth Circuit in 1998 affirmed a similar decision from the U.S. District Court for the District of South Carolina. In a personal injury suit, the plaintiff invoked a South Carolina law that tolled the running of the state's statute of limitations against a non-resident corporation.[5] *Alday v. Tecphy Div. Firminy*, 10 F. Supp. 2d 562, 563 (D.S.C. 1998), *aff'd per curiam*, 182 F.3d 906 (Table), 1999 WL 374124 (4th Cir. 1999). Citing avoidance doctrine and relying on a decision of the South Carolina Supreme Court, the district court construed the tolling statute as inapplicable where the nonresident defendant was amenable to service. *Id.* at 564. Thus, because the defendant in *Alday* had been amenable to service, the tolling statute did not apply. *Id.* at 565. The Fourth Circuit affirmed *per curiam*. 1999 WL 374124, at *1.

Maryland's Section 5-204 cannot withstand similar scrutiny. Like the above tolling statutes, Section 5-204 was animated by the obsolete concern that "that the unregistered foreign corporation, not having made it easy for a plaintiff to serve it with process, should be completely barred from raising limitations." ECF 46 at 10 (quoting *Turner v. Smalis*, 622 F. Supp. 248, 254 (D. Md. 1985), aff'd sub nom. *Turner v. Byers*, 813 F.2d 403 (Table) (4th Cir. 1986)). Yet Section 5-204 is more discriminatory than any of the above tolling statutes. It discriminates not by simply

---

[5] The statute read:

> If when a cause of action shall accrue against any person he shall be out of the State, such action may be commenced within the terms in this chapter respectively limited after the return of such person into this State. And if, after such cause of action shall have accrued, such person shall depart from and reside out of this state or remain continuously absent therefrom for the space of one year or more, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action.

S.C.Code Ann. § 15–3–30.

tolling the period of a corporation's absence, but by disqualifying the corporation altogether, "completely barr[ing]" it from raising a limitations defense. *Id.* It also discriminates on its face against corporations involved only in "*inter*state commerce," which so plainly violates the Commerce Clause that this Court has already read this language out of Section 5-204. *See Turner*, 622 F. Supp. at 254 ("That is, a foreign corporation is simply not required to register in Maryland, either to litigate its own claims or defend itself on limitations grounds, unless it is doing intrastate business in Maryland."). And, respectfully, Section 5-204's discriminatory impact is amplified by the Court's May 20 Opinion, the logical effect of which is to bar all unregistered out-of-state corporations sued in Maryland from raising a limitations defense at the motion to dismiss stage.

    **b. Section 5-204 is invalid because the interest being advanced by the statute does not outweigh the burden imposed on interstate commerce.**

Even if Section 5-204 were not per se unconstitutional, it would still be unconstitutional under the *Pike* analysis, because it imposes burdens on interstate commerce that are excessive in relation to any local benefits it may confer. *See Pike*, 397 U.S. at 142; *see also Yamaha Motor Corp. v. Jim's Motorcycle, Inc.*, 401 F.3d 560, 569-573 (4th Cir. 2005). That is because the local benefit is nonexistent.

Section 5-204 is the modern incarnation of a statute first enacted in 1937. *See* 1937 Laws of Md. ch. 502, § 122; *see also Turner*, 622 F. Supp. 248 (citing *G.E.M. Inc. v. Plough, Inc.*, 228 Md. 484, 486, 180 A.2d 478, 480 (1962) and its discussion of earlier Maryland statutes that created the same obligation for foreign corporations). At that time, and for the next eight years, Section 5-204's precursors (and other, similar state statutes) served a vital purpose under the then-prevailing common-law rule that state courts could only exercise jurisdiction over defendants served with process within the state. *See Pennoyer v. Neff*, 95 U.S. 714, 722 (1877). The "foundation of jurisdiction" being "physical power," *McDonald v. Mabee*, 243 U.S. 90, 91 (1917),

a state could not exercise personal jurisdiction over a defendant unless the plaintiff served the defendant with process within the state, where the state could exercise physical power over the defendant. *See Burnham v. Superior Court of Cal.*, 495 U.S. 604, 616 (1990). In an era when obtaining jurisdiction over non-resident defendants was impossible, these statutes protected plaintiffs by preventing limitations on their claims from expiring before they could effectuate the personal, in-state service the common law required. "Many States responded to the problem by enacting laws that tolled the limitations period for out-of-state defendants, whether they fled the jurisdiction in the face of a lawsuit or left innocently for greener pastures." *Garber v. Menendez*, 888 F.3d 839, 841 (6th Cir. 2018).

However, the Supreme Court abandoned that common-law rule in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), holding that "[d]ue process does not necessarily require the States to adhere to the unbending territorial limits on jurisdiction set forth in *Pennoyer*." *Burnham*, 495 U.S. at 618 (emphasis in original). Under the "long-arm" jurisdiction *International Shoe* permitted, states no longer had to have physical power over the parties to a suit to hale them into a state court.

The States responded by enacting "long-arm" statutes that authorized suits against non-residents and provided means for serving them. *Garber*, 888 F.3d at 842. Maryland followed suit. Today, "a defendant need not have been physically present in Maryland" to be haled into its courts. *Aphena Pharma Sols.-Maryland LLC v. BioZone Lab'ys, Inc.*, 912 F. Supp. 2d 309, 315 (D. Md. 2012). These long-arm statutes largely obviated any need for out-of-state tolling laws. "Some state legislatures as a result amended their tolling statutes to apply only if their long-arm statute—usually construed to extend as far as the Due Process Clause permitted—could not reach the out-of-state defendant." *Id.* Maryland did not make that change. But because Maryland plaintiffs can

10

now hale foreign defendants into court regardless of whether the defendant is physically in Maryland at the time the suit is filed, Section 5-204 has no local benefit.

Because the statute has no local benefit, the Commerce Clause cannot tolerate the burden that Section 5-204 imposes on interstate commerce. *See, e.g., PSINet, Inc. v. Chapman*, 362 F.3d 227, 240 (4th Cir. 2004) (striking down a statute under the *Pike* balancing test because it "ha[d] no local benefit"). Other courts have invalidated tolling statutes under the *Pike* balancing test for this exact reason. For example, in *Cadles of Grassy Meadows II, L.L.C. v. Goldner*, 3:06-CV-1542-M, 2007 WL 1701839, at *7 (N.D. Tex. June 12, 2007), the court struck down a Texas statute that suspended a statute of limitations while a defendant was absent from the state. The court noted that the statute burdened interstate commerce, since it implicated the defendant's economic interests and impeded the free movement of persons and goods. *Id.* at *8. The court reasoned that this burden on interstate commerce was not outweighed by the state's interest in protecting domestic creditors and facilitating suits because the state is able to exercise long-arm personal jurisdiction over an out-of-state entity. *Id.* As the court explained, "[a]lthough the state's interest may have been best served by the tolling statute when it was first passed in 1841, when the state was unable to exert personal jurisdiction over nonresidents when they were not physically present in the state of Texas, that rationale is no longer furthered by the tolling statute given modern personal jurisdiction law." *Id.*; *see also, e.g.*, *Rademeyer v. Farris*, 284 F.3d 833, 838-39 (8th Cir. 2002) (similar); *Guyton v. J.M. Manuf., Inc.*, 894 F. Supp. 252, (D.S.C. 1995) (similar). Section 5-204 thus fails under *Pike* as well.

*   *   *

Section 5-204 is thus either unconstitutional on its face or at best salvageable under avoidance doctrine if, as in the District of South Carolina, its application is limited to instances

where a party was not amenable to service via a long-arm statute. This is not such an instance. Plaintiff readily served Ultragenyx at its California headquarters by certified mail. ECF 5. Ultragenyx must therefore be permitted to raise a limitations defense.

## II.    Absent Section 5-204, the statute of limitations bars Plaintiff's claim.

With Section 5-204 no longer impeding Ultragenyx's right to assert a limitations defense, this Court can now reach the merits of that defense. As the Court's opinion explained, "Lacks' claim is time-barred if it accrued before August 10, 2020 and the discovery rule does not delay the start of the limitations clock." ECF 46 at 9. Publicly available materials show that, indeed, Plaintiff's claim accrued before August 10, 2020. And the discovery rule does not delay the limitations clock because Plaintiff had overwhelming notice of the facts underlying his claim years before that date.

### c.    Public records show that Plaintiff's claim accrued when Ultragenyx was conferred access to HeLa-related materials more than three years ago.

The Complaint includes no express statement as to when Ultragenyx acquired access to HeLa-related materials. But publicly available evidence subject to judicial notice shows this occurred before August 10, 2020. A court must take judicial notice where a party requests it and the court is supplied with the necessary information from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2). Ultragenyx incorporates its original motion to dismiss and again highlights this information below.

**First**, the Complaint itself refers to events requiring that Ultragenyx already had HeLa access before Plaintiff's limitations deadline. Paragraph 58 states, "Ultragenyx licensed its HeLa PCL platform to Daiichi Sankyo Company for $200 million." This agreement was publicly

announced on March 31, 2020, which is before August 10, 2020, and the public announcement—

filed with the SEC—referenced "Ultragenyx's HeLa producer cell line (PCL) platform" by name.[6]

**Second**, the company's SEC filings from before August 10, 2020, repeatedly refer to the

company having a HeLa-related platform.  Some of these references are found in SEC filings of

Dimension Therapeutics, Inc., which acquired by Ultragenyx in 2017.[7]  For instance, Dimension's

2016 10-K report repeatedly discusses Dimension's HeLa-related platform.

- We believe our continued development of our manufacturing processes, methods and expertise will yield the most comprehensive and leading manufacturing platform developed to date, including *our next generation HeLa 2.0 platform*, for AAV-based gene therapy product candidates.

- We view the quality, reliability and scalability of our innovative gene therapy manufacturing approach, *including our next generation HeLa 2.0 platform*, as a competitive advantage crucial to our long-term success, and we will continue to focus on maintaining a leadership position in this area.

- Our AAV manufacturing is currently performed in three mammalian cell types, human embryonic kidney 293 cells, or HEK293 adherent cells, HEK293 suspension cells, *and HeLa cells*.[8]

Similarly, Ultragenyx's 2019 annual report, filed with the SEC on February 14, 2020, refers to

"our proprietary HeLa platform."[9]  These filings prove that the HeLa-related platform on which

this case is built existed before August 10, 2020.

Courts commonly take judicial notice of the content of SEC filings like these for the

existence of that content (which is different from its assertive truth).  *KBC Asset Mgmt. NV v. DXC

Tech. Co.*, 19 F.4th 601, 607 (4th Cir. 2021) ("We may also take judicial notice of the content of

---

[6] https://www.sec.gov/Archives/edgar/data/1515673/000156459020014638/rare-ex991_6.htm

[7] https://www.sec.gov/Archives/edgar/data/1515673/000119312517306534/d458405dex99a1a. htm.

[8] https://www.sec.gov/Archives/edgar/data/1592288/000156459017003781/dmtx-10k_20161231.htm (emphases added).

[9] https://seekingalpha.com/filings/pdf/13919679

relevant Securities and Exchange Commission ('SEC') filings and other publicly available documents included in the record.") (citing *In re PEC Sols., Inc. Sec. Litig.*, 418 F.3d 379, 390 n.10 (4th Cir. 2005)).    And here, this Court can take notice of the dates on Ultragenyx and Dimension's SEC filings and the fact that they reference a HeLa platform, and it can do so without reading any assertive statement for its truth.  That is all that is needed to determine Ultragenyx had been conferred the benefit alleged in the Complaint as of those dates, which are before August 10, 2020.

**Third**, Ultragenyx has a number of patent filings referencing the use of HeLa cells in AAV manufacturing that were published well before the limitations period.[10]  The existence of these filings on the dates listed again shows that Ultragenyx was in possession of HeLa-related cells well before the limitations period. The Court may take judicial notice of the words and dates in these filings to again establish that Ultragenyx had access to HeLa before their filing. *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931, 932 n.3, 932 n.4 (Fed. Cir. 2014) (it is "well-established that a court may take judicial notice of patents or patent applications").

---

[10] *See, e.g.*, U.S. Patent No. 11,013,774, at Col. 11, Lns. 1-2 (filed Mar. 28, 2017) (published Oct. 5, 2017) (issued Sept. 14, 2018) ("AAV vectors (A) (C) and (D) were produced in HEK293cells, particle (B) was produced in HeLa cells."); Australian Patent No. 2017241777 B2, at Col. 16, Lns. 5-6 (filed Mar. 28, 2017) (published Oct. 5, 2017) (issued Feb. 3, 2022); U.S. Patent App. No. US 2020/0048641, at 0059 (filed Mar. 22, 2018) (published Feb. 13, 2020) ("rAAV bulk harvest material was produced through culture of a HeLa producer cell line and infection with a helper virus in a 3 L Single-Use Bioreactor (SUB)."); U.S. Patent App. US 2021/0277416 A1, at 0037 (filed Oct. 13, 2017) (published Sep. 9, 2021) ("A HeLa producer cell line derived from the HeLa S3 parental cell line was used to produce rAAV in this experiment."); U.S. Patent App. US 2020/0032221 A1, at 0061 (filed Mar. 22, 2018) (published Jan. 30, 2020) ("HeLa S3 cells cultured in suspension were plated one day before transfection to allow them to adapt to adherent culture condition."); U.S. Patent App. US 2020/0325455 A1, at 0157 (filed Apr. 9, 2020) (published Oct. 15, 2020) ("HeLa producer cells were transfected with varying concentrations of siRNA using Lipofectamine RNAiMax according to the manufacturer's instructions.").

14

To be clear, Ultragenyx is not asking the Court to read any of these materials for the truth of any assertions.  Rather, the Court need only notice the presence of the term "HeLa" in documents with dates before August 10, 2020.  Plaintiff cannot reasonably dispute that SEC or patent filings were in fact filed on the dates listed, or that they said the words they said.  Non-assertive, public references to a "HeLa PCL platform" and the like from before August 10, 2020, are strong evidence that the platform referenced in the Complaint existed before August 10, 2020.  That means that Plaintiff's claim against Ultragenyx accrued before August 10, 2020.  *See, e.g.*, *BYD Co. v. Alliance for American Manufacturing*, 554 F. Supp. 3d 1, 13-14 (D.D.C. 2021) (taking notice of publicly available source code to determine that an allegedly defamatory press release was dated before the limitations deadline, and granting dismissal); *Hernandez v. Sutter West Capital*, No. C 09-03658 CRB, 2010 WL 3385046, at *3 (N.D. Cal. Aug. 26, 2010) (taking notice of "publicly recorded documents" provided by a defendant showing the plaintiff refinanced his home in 2006 but did not sue until 2009, past the two-year statute of limitations, and dismissing with prejudice while specifically noting, "This does not convert the Motion to Dismiss into a motion for summary judgment").

### d. Plaintiff had notice that businesses were in possession of HeLa-related materials long before the limitations period.

The record of Plaintiff's notice of the facts underlying this lawsuit before August 10, 2020, is overwhelming.

Maryland's three-year statute of limitations for unjust enrichment begins to run when the plaintiff "knew or reasonably should have known of the wrong."  *Jason v. Nat'l Loan Recoveries, LLC*, 227 Md. App. 516, 531 (2016) (citation omitted).  "[W]hen a plaintiff has knowledge of circumstances indicating that he may have been harmed, the law imposes a duty on that plaintiff to investigate whether in fact he has been harmed."  *Russo v. Ascher*, 76 Md. App. 465, 470 (1988).

15

A plaintiff is thus on "inquiry notice" and the statute of limitations will begin to run, when the plaintiff knows of facts that "should have raised their suspicions," that triggers the duty to diligently investigate and pursue any claims against all defendants. *Porter v. GreenPoint Mortg. Funding, Inc.*, No. DKC–11–1251, 2011 WL 6837703, at *6 (D. Md. Dec. 28, 2011).

Plaintiff has known about circumstances of HeLa cells' creation and their commercial use for a quarter century. Plaintiff has known since at least the 1997 BBC documentary, when Plaintiff appeared on camera and stated that he had hired lawyers to try to figure out who was making money from HeLa cells.[11] Plaintiff has known since at least as Rebecca Skloot's 2010 publication of *The Immortal Life of Henrietta Lacks* cast a national spotlight on Henrietta Lacks's story and the commercial use of HeLa cells (plus the 2017 HBO film adaptation starring Oprah Winfrey). Plaintiff has also known since he and his counsel went on media tours in 2017 and 2018 about the lawsuits they said they were filing but did not file.[12] And Plaintiff has certainly known of a need to assert his rights since he personally published his own book in May 2020 writing about how he had "had more lawyers than we can count," some of whom had told him that "the statute of limitations passed on any cause of action we may have had."[13]

This is an exceptional record of notice, particularly at the pleadings phase. The Court is permitted to take judicial notice of these publications for purposes of determining when information was in the public realm and knowable to Plaintiff. *See, e.g.*, *In re Human Genome*

---

[11] JustAdamCurtis, *The Way of All Flesh*, YouTube (June. 20, 2016), https://www.youtube.com /watch?v=FgMUlVl-poE., at 49:30-50:11. Indeed, the documentary reported their lawyers "approached most of the major biotechnology and pharmaceutical companies." *Id.*

[12] Andrea K. McDaniels, *Henrietta Lacks' family wants compensation for her cells*, Baltimore Sun (Feb. 15, 2017), https://www.baltimoresun.com/health/bs-hs-henrietta-lacks-johns-hopkins-20170213-story.html; DeNeen L. Brown, *Can the 'immortal cells' of Henrietta Lacks sue for their own rights?*, Wash. Post (Jun. 25, 2018), https://www.washingtonpost.com/news /retropolis/wp/2018/06/25/can-theimmortal-cells-of-henrietta-lacks-sue-for-their-own-rights/.
[13] Ron Lacks, *Henrietta Lacks, The Untold Story*, at 136 ("First Print January 2020).

*Sciences Inc. Sec. Litig.*, 933 F. Supp 2d 751, 758 (D. Md. 2013) ("[D]istrict courts in this circuit 'routinely take judicial notice of newspaper articles, analysts' reports, and press releases in order to assess what the market knew at particular points in time, even where the materials were not specifically referenced in the complaint.'") (citations omitted); *Benak ex rel. All. Premier Growth Fund v. All. Capital Mgmt. L.P.*, 435 F.3d 396, 401 (3d Cir. 2006) (in affirming dismissal of a securities action because the claim was time-barred, the court took judicial notice of newspaper articles for the purpose of establishing "what was in the public realm at the time, not whether the contents of those articles were in fact true"); 1 Weinstein's Evidence Manual § 4.02 (2021) ("Courts may also take judicial notice of facts that various newspapers, magazines, and books were published solely as an indication of information in the public realm at the relevant time, not whether the contents of those articles were, in fact, true.").

Here, all of this "widespread publicity" would have led a reasonable person in Plaintiff's position to investigate potential claims and assert available rights. *Cf. Tani v. Washington Post*, No. PJM 08-1130, 2009 WL 8652384, at *2 (D. Md. June 18, 2009) (dismissing a defamation action where the articles at issue "were widely available online and could have been discovered immediately"); *Wyne v. Medo Industries, Inc.*, 2004 WL 3217860, at *7 (D. Md. Mar. 25, 2004) (citing *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 525 (N.D. Cal. 2000) (plaintiff's claim was time-barred because his cause of action accrued when he first suspected, through a newspaper article, that the defendant may have been using his alleged trade secrets)). Thus, Plaintiff missed his filing deadline by years, and his claim is time-barred.

### III. If the Court denies this motion, it should certify its order for immediate interlocutory appeal under 28 U.S.C. § 1292(b).

If the Court denies this motion for judgment on the pleadings under Rule 12(c) and determines that Section 5-204 can still bar Ultragenyx from raising a limitations defense, the Court

17

should certify its order for immediate appellate review by the Fourth Circuit under 28 U.S.C. § 1292(b).  Under 28 U.S.C. §1292(b), the district court may certify an order for interlocutory appeal if the decision involves: "[1] a controlling question of law [2] as to which there is a substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  Those criteria are met here.

First, this Court's order on Ultragenyx's motion for judgment on the pleadings would present "controlling question[s] of law." 28 U.S.C. § 1292(b).  Ultragenyx's constitutional challenge to Section 5-204 is a "pure question of law" because it is "an abstract legal issue that the court of appeals can decide quickly and cleanly." *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340 (4th Cir. 2017) (citation omitted).  Indeed, courts in this district have pointed to "the meaning of a statutory or constitutional provision, regulation, or common law doctrine," as examples of pure questions of law appropriate for certification under 1292(b).  *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 623 (D. Md. 2013).  And Ultragenyx's constitutional challenge to Section 5-204 is "controlling" because its "resolution would be completely dispositive of the litigation," *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 452 (D. Md. 2015), or, at a minimum, would "control[] many aspects of the proceedings in substantial respects, particularly the scope of the discovery," *In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 741, 742 (D. Md. 2003).

Second, even if this Court declines to grant Ultragenyx's motion for judgment on the pleadings, the serious constitutional questions raised by application of Section 5-204 to Ultragenyx indicate that certification is appropriate. Even before the Supreme Court decided *Bendix*, another jurist of this Court expressed doubt about the constitutionality of Section 5-204.  *See Turner*, 622 F. Supp. at 254.  Since *Bendix*, other courts have struck down comparable statutes.  *See supra* at

6-8.  And other courts have certified this issue.  *See Juzwin*, 900 F.2d at 688 (noting that the district court there had "certified the order under 28 U.S.C. 1292(b)").  If this Court declines to invalidate Section 5-204, then the disagreement between this Court and those others indicates that this Court should certify its order to immediate appeal.  *See Goodman v. Archbishop Curley High Sch., Inc.*, 195 F. Supp. 3d 767, 774 (D. Md. 2016) (explaining that "a substantial ground for difference of opinion" exists where "courts themselves disagree as to what the law is") (internal quotation marks omitted).

Third, immediate appeal of the Court's resolution of this motion may materially advance the termination of this litigation, either by ending it or, at the very least, by eliminating issues and substantially narrowing this case.  *See Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F.Supp.2d 612, 623 (D. Md. 2013) (explaining that "a district court should consider whether an immediate appeal would: '(1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly'").  The statute of limitations question—if resolved in Ultragenyx's favor—is dispositive in this case, and resolution of that question could save the Court and the parties substantial resources.  *Compare, e.g.*, 16 Charles Alan Wright et al., Federal Practice and Procedure § 3931 (3d ed. 2008) (footnotes omitted) (explaining that "limitations" defenses are "[a]mong the defenses that regularly provide occasions for 1292(b)").

Finally, as the Supreme Court has noted, a "district court[] should not hesitate to certify an interlocutory appeal" when its ruling "involves a new legal question or is of special consequence." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009).  That is precisely the case here. The statute of limitations is three years.  Yet Plaintiffs' claim is decades old.  Depriving Ultragenyx of the benefit of Maryland's statute of limitations—despite the ease with which Plaintiff

accomplished service—is an unconstitutional restraint on interstate commerce. A contrary ruling from this Court would open many foreign businesses to suit in Maryland in perpetuity, and would effectively forbid unregistered foreign businesses from raising limitations defenses at the motion to dismiss stage. If this Court concludes that the Constitution permits that result, an appellate court should confirm that reading of the statute before Ultragenyx submits to the substantial burdens of discovery and trial on a time-barred claim.

## CONCLUSION

Because Section 5-204 discriminates against out-of-state corporations including those amenable to long-arm service, it violates the Commerce Clause. It therefore cannot bar Ultragenyx from protection under Maryland's statute of limitations. And, with Ultragenyx's right to raise a limitations defense properly restored, this lawsuit must fail as irreversibly time-barred and should be dismissed with prejudice.

Respectfully submitted,

_____/s/_____

Tonya Kelly Cronin (Bar No. 27166)
BAKER DONELSON
100 Light Street
Baltimore, MD 20001
Tel.:410-862-1049
tykelly@bakerdonelson.com

Andrew T. George (Fed. Bar No. 18755)
BOURELLY, GEORGE + BRODEY PLLC
1050 30th Street, NW
Washington, DC 20007
Tel.: 202-341-8805
andrew.george@bgblawyers.com

Nadira Clarke (Fed. Bar No. 20254)
HOGAN LOVELLS
555 13th Street, NW
Washington, DC 20004

Tel: 202-637-5600
nadira.clarke@hoganlovells.com

*Attorneys for Defendant Ultragenyx
Pharmaceutical, Inc.*