IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RON L. LACKS, Personal Representative of the Estate of Henrietta Lacks, | * |
| *Plaintiff*, | * |
| v. | *   No. 1:23-cv-02171-DLB |
| ULTRAGENYX PHARMACEUTICAL, INC., | * |
| *Defendant*. | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**INTERVENOR ATTORNEY GENERAL OF MARYLAND'S RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Intervenor, the Attorney General of Maryland, hereby opposes to the Motion for Judgment on the Pleadings ("the Motion") filed by the defendant, Ultragenyx Pharmaceutical, Inc., because the Motion incorrectly asserts that § 5-204 of the Courts and Judicial Proceedings Article of the Maryland Code violates the Commerce Clause of the United States Constitution, U.S. Const. art. I, § 8, cl. 3.

### INTRODUCTION

In this action, the Estate of Henrietta Lacks, through Ron L. Lacks, the personal representative, claims that Ultragenyx, a pharmaceutical company organized in Delaware and headquartered in California, has been unjustly enriched by the use of reproducing

human cells, originally collected from Henrietta Lacks without her consent, to produce gene therapies for rare diseases.

Ultragenyx filed a motion to dismiss, claiming that the Complaint was filed beyond the applicable statute of limitations. (ECF 6.) The Lacks Estate opposed dismissal, arguing that § 5-204 barred Ultragenyx from a statute of limitations defense. (ECF 21.) This Court denied Ultragenyx's motion to dismiss. (ECF 46, 47.) Ultragenyx then filed the pending Motion, arguing that § 5-204 violates the Commerce Clause of the United States Constitution. For the reasons below, Ultragenyx's argument should be rejected.

## ARGUMENT

**I. SECTION 5-204 OF THE COURTS AND JUDICIAL PROCEEDINGS ARTICLE IS CONSTITUTIONAL BECAUSE IT APPLIES ONLY TO FOREIGN CORPORATIONS DOING LOCALIZED BUSINESS IN MARYLAND.**

Section 5-204 of the Courts and Judicial Proceedings Article provides that a "foreign corporation or foreign limited partnership required by law to qualify or register to do business in" Maryland "may not benefit from any statute of limitations" in a case that is filed "while the foreign corporation or foreign limited partnership is doing intrastate or interstate or foreign business in" Maryland "without having qualified or registered."

Subtitle 2 of Title 1 of the Corporations and Associations Article governs when foreign (i.e., out-of-state) corporations are required to "qualify" or "register" to conduct business in Maryland. A foreign corporation must "qualify" with the Maryland State Department of Assessments and Taxation ("SDAT") before conducting any "intrastate

business" in Maryland.  Md. Code Ann., Corps. & Ass'ns § 7-203(a).  To "qualify," a corporation must provide certain information to SDAT, including the address of the corporation, the name and address of a resident agent in Maryland or appointment of SDAT to serve as its resident agent, and proof that the corporation is in good standing where it is organized.  Corps. & Ass'ns § 7-203(b).  If a foreign corporation is not already qualified, it must "register" with SDAT before conducting any "interstate or foreign business" in Maryland.  Corps. & Ass'ns § 7-202(a).  Registering with SDAT requires providing the same information as is needed to qualify.  Corps. & Ass'ns § 7-202(b).

No case has ruled on the constitutionality of § 5-204, but cases considering constitutional challenges to similar statutes show that § 5-204 does not violate the Commerce Clause.  The United States Supreme Court has made clear that "closed-door" statutes, which prohibit foreign corporations engaged in "localized" business within a state from bringing suit in that state unless the corporation is qualified or registered to do business there, do not violate the Commerce Clause.  *See Allenberg Cotton Co., Inc. v. Pittman*, 419 U.S. 20, 32-33 (1974); *Eli Lilly & Co. v. Save-On Drugs, Inc.*, 366 U.S. 276 (1961); s*ee also*; *S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1511 (11th Cir. 1990) (recognizing that, under *Allenberg Cotton*, closed-door statutes are constitutional when a foreign corporation does "localized" business in state); *Maryland Digital Copier v. Litigation Logistics, Inc.*, 394 F. Supp. 3d 80, 89 (D.D.C. 2019) ("In assessing whether a state's door-closing statute unduly burdens interstate commerce, the

key question is whether a foreign corporation has 'localized its business' in the forum state." (quoting *Allenberg Cotton*).

Maryland has a closed-door statute that bars foreign corporations from bringing suit in Maryland if they are "doing or ha[ve] done any intrastate, interstate, or foreign business" in Maryland without being qualified or registered. Corps. & Ass'ns § 7-301. The Supreme Court of Maryland has interpreted "doing business" in Maryland, for purposes of § 7-301, as meaning that the corporation "is doing such a substantial amount of localized business in this State that the corporation could be deemed 'present' here." *Yangming Marine Transport Corp. v. Revon Products U.S.A., Inc.*, 311 Md. 496, 502 (1988). Interpreted this way, § 7-301 complies with the Commerce Clause under *Allenberg Cotton*.

*Yangming* involved a lawsuit brought in Maryland by a cargo shipping company based in China regarding freight charges. The shipping company was not qualified or registered in Maryland and the defendant asserted that § 7-301 barred the shipping company from bringing the suit. *Id.* at 500. If § 7-301 did create such a bar, the Court was asked to determine whether that violated the Commerce Clause. *Id.* at 499.

The *Yangming* Court held that the shipping company's activities in Maryland were not "sufficiently localized in Maryland to constitute 'doing business' within the meaning of § 7-301." *Id.* at 509. Since it determined that § 7-301 did not bar the suit, the Court did not reach the Constitutional question. The Court, however, "acknowledged that the Court's construction and applications of the Maryland statutory scheme in this and prior cases

obviously are influenced by constitutional considerations." *Id.* The interpretation of § 7-301 in a manner that aligns with the United State Supreme Court's Commerce Clause case law, including *Allenberg Cotton*, was intentional: "Our construction and applications are in accord with the principle that a court will, whenever reasonably possible, construe and apply a statute to avoid casting serious doubt upon its constitutionality." *Id.* The Court further explained that the United State Supreme Court has held that "closed-door" statutes, like § 7-301, "cannot, under the Commerce Clause, apply to unregistered or unqualified foreign corporations engaged in wholly interstate or foreign commerce." *Id.* at 510 (citations omitted). Under that precedent, the *Yangming* Court warned, "it is questionable whether, under the Commerce Clause, § 7-301 could validly be applied to bar this action by" the shipping company. *Id.*

Like the bar to filing suit described in § 7-301 of the Corporations and Associations Article, the text in § 5-204 of the Courts and Judicial Proceedings Article that prohibits unqualified or unregistered corporations from benefitting from a statute of limitations, which Ultragenyx challenges in this case, applies to foreign corporations that conduct "intrastate or interstate or foreign business" in Maryland. The Supreme Court of Maryland, in *Yangming*, interpreted § 7–301 as applying to foreign corporations doing a sufficiently "substantial amount of localized business" in Maryland to be deemed present in the State. Due to the similar language in the text of the two statutes regarding their scope, § 5-204 should be interpreted the same way.

Section 5-204, which limits the ability to utilize a statute of limitations defense, is similar to a closed-door statute because both apply to foreign corporations conducting localized business in Maryland and both set sanctions as enforcement mechanisms for corporations that do not qualify or register if required to do so.  This Court, in *Turner v. Smalis*, (which Ultragenyx cites in its Motion, ECF 57-1 at 2) opined "that the Maryland courts would construe 'doing business' in the same way for purposes of analysis under § 5–204 . . . as they have under the broader door-closing statute . . . § 7–301." 622 F. Supp. 248, 254 (D. Md. 1985).  Thus, properly interpreted, § 5-204 applies only to foreign corporations that have localized business in Maryland such that they are present in the State, and therefore does not violate the Commerce Clause.  Hence, the result is not that foreign corporations cannot assert a statute of limitations defense in an action in Maryland.  Instead, when a foreign corporation asserts a limitations defense, the inquiry is whether the corporation's business in Maryland is sufficiently localized for § 5-204 to apply.

## II. ULTRAGENYX'S RELIANCE ON *BENDIX* AND OTHER CASES IS MISPLACED.

In challenging § 5-204, Ultragenyx cites several cases where courts have found state statutes to violate the Commerce Clause, most notably *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888 (1988).  (ECF 57-1 at 5.)  The statutes at issue in those cases, however, are readily distinguishable from § 5-204 because they concern foreign corporations engaged exclusively in interstate commerce, while § 5-204, interpreted in accordance with Maryland case law, applies only to foreign corporations that are engaged

in sufficiently *localized business* in Maryland to be required to qualify or register with SDAT.

*Bendix* addressed an Ohio statute that tolled a statute of limitations while a corporation was not "present" in Ohio. 486 U.S. at 889. To be present, and thus not have the statute of limitations tolled against it, a foreign corporation would have had to appoint a resident agent in Ohio, "which operates as consent to the general jurisdiction of the Ohio courts." *Id.* That general jurisdiction against the foreign corporation would then extend to "matters to which Ohio's tenuous relation would not otherwise extend." *Id.* at 893.

*Bendix* is not relevant here. The statute at issue in *Bendix* required foreign corporations to register in order to avoid tolling a statute of limitations against them, regardless of the extent of the corporations' business activities in Ohio. In the present case, however, § 5-204 prohibits foreign corporations from benefiting from the statute of limitations defense if they do "localized" business in Maryland and have not qualified or registered with SDAT. Unlike the Ohio statute, § 5-204 does not apply to corporations engaged only in non-localized, interstate business.

*Bendix* itself acknowledged a distinction between the Ohio law and state statutes that, like § 5-204, are used to enforce requirements for foreign corporations to qualify or register in a State where they conduct localized business. In *Bendix*, the Supreme Court stated: "The State may not condition the exercise of the defense on the waiver or relinquishment of rights that the foreign corporation would otherwise retain." 486 U.S. at

7

893.  In *Bendix*, the "waiver" at issue was foreign corporations' requirement to submit to general jurisdiction in Ohio in order to prevent tolling of the statute of limitations.  *Id.* (explaining that the Ohio statute "forces a foreign corporation to choose between exposure to the general jurisdiction of Ohio courts or forfeiture of the limitations defense, remaining subject to suit in Ohio in perpetuity").  Section 5-204 does not require a foreign corporation to submit to general jurisdiction in Maryland, or to waive any other right, because it only applies to foreign corporations who conduct localized business in Maryland and are therefore already lawfully required to qualify or register with SDAT.

Importantly, the Supreme Court followed the above-quoted statement in *Bendix*, that the "State may not condition the exercise of the defense on the waiver or relinquishment of rights that the foreign corporation would otherwise retain," with a "cf." citation to *Allenberg Cotton*, in which the Supreme Court previously recognized that closed-door statutes, applied to companies doing localized business in a state, do not violate the Commerce Clause.  So the Supreme Court understood that the ruling in *Allenberg Cotton* was distinguishable from the holding in *Bendix*.  Accordingly, *Bendix* is not applicable to door-closing statutes or other similar statutes, like § 5-204.  Notably, Ultragenyx cites no case where *Bendix* has been applied to such a statute.

Ultragenyx points to other cases which follow *Bendix*, including *Juzwin v. Asbestos Corp., Ltd.*, 900 F.2d 686 (3d Cir. 1990), *Bottineau Farmers Elevator v. Woodward-Clyde Consultants*, 963 F.2d 1064 (8th Cir. 1992), and *Ross v. O'neal*, 525 F. App'x 600 (9th Cir.

8

2013).  (ECF 57-1 at 6-8.)  Each of these cases involves a statute that, like the Ohio statute in *Bendix*, tolled the statute of limitations while a person or foreign corporation was not present in the state.  Since, the *Bendix* Court recognized a distinction between such state tolling statutes and state statutes, like in *Allenberg Cotton*, that serve as enforcement mechanisms for requirements that foreign corporations qualify or register when doing localized business in a state, these cases are not applicable to the present case.

Ultragenyx also points to *Turner*.  (ECF 57-1 at 2.)  *Turner*, however, does not support Ultragenyx's argument.  As made clear in *Allenberg Cotton*, door-closing statutes do not violate the constitution when applied to foreign corporations doing localized business in a state.  And in *Turner*, this Court explained that § 5-204 is less concerning under the Commerce Clause than would be a door-closing statute:  "The barring of a litigant from raising a specific defense is, obviously, a less drastic burden on interstate commerce than closing the courthouse doors completely in its face."  622 F. Supp. at 254.  Section 5-204, therefore, is permissible under *Allenberg Cotton*.

In addition, as if almost anticipating the *Bendix* holding that came three years later, *Turner* explained that "[i]f the imitations statute required, through its incorporation of the provisions of the Corporations and Associations Code, that a foreign corporation be *qualified* or *licensed* in Maryland to be able to raise limitations, even if it were doing only interstate business here, the statute would impose an impermissible burden on interstate commerce, repugnant per se to the Commerce Clause."  622 F. Supp. at 254 (emphases in

original). But § 5-204, properly interpreted, does *not* apply to foreign corporations engaged only in "interstate" business. Rather, it applies to those doing "localized" business in Maryland. *Turner*, therefore, supports the important distinction between *Bendix* and *Allenberg Cotton*, and the constitutionality of § 5-204.

## CONCLUSION

This Court should reject Ultragenyx's argument that § 5-204 violates the United State Constitution.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Jeffrey Luoma
JEFFREY S. LUOMA (Federal Bar No. 30791)
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
jluoma@oag.state.md.us
(410) 576-6441
(410) 576-6955 (facsimile)

Date:  September 6, 2024

## CERTIFICATE OF SERVICE

I certify that on September 6, 2024, I filed the foregoing document with the Clerk of Court and served the foregoing document on all counsel of record and any other registered users through the Court's CM/ECF system.

/s/ Jeffrey S. Luoma
Jeffrey S. Luoma
