**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**Baltimore Division**

| | |
|---|---|
| **RON L. LACKS, PERSONAL REPRESENTATIVE OF THE ESTATE OF HENRIETTA LACKS,** | |
| **Plaintiff,** | **Case No. 1:23-cv-02171-DLB** |
| **VS.** | |
| **ULTRAGENYX PHARMACEUTICAL, INC.,** | |
| **Defendant.** | |

**PLAINTIFF'S OPPOSITION TO ULTRAGENYX'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

    I.         The Statutory Scheme Governing Corporate Registration in Maryland ............... 3

    II.       Ultragenyx's Ties to Maryland and This Court's Prior Ruling ............................ 5

STANDARD OF REVIEW ................................................................................................... 7

ARGUMENT ........................................................................................................................ 7

    I.         Ultragenyx's Motion is Untimely Because it is a Disguised Motion for
             Reconsideration ..................................................................................................... 7

    II.       Section 5-204 is Consistent with the Dormant Commerce Clause ........................ 9

         a.      Section 5-204 is Constitutional Because it Complies with the Intrastate Business
              Requirement From *Eli Lilly*. ............................................................................. 9

         b.      Section 5-204 is Constitutional Because Maryland Law Treats Unregistered
              Foreign Corporations More Leniently Than Unregistered Domestic Corporations.
              .............................................................................................................. 13

         c.      Alternatively, if Section 5-204 Does Facially Discriminate Against Foreign
              Corporations, Federal and Maryland Severability Principles Require it be
              Construed to Apply to All Corporations. ........................................................... 14

         d.      Section 5-204 Clearly Satisfies *Pike* Balancing, Which In This Context
              Constitutes Nothing More Than Rational Basis Review. ..................................... 17

         e.      Ultragenyx Ignores the Limits On *Pike* Challenges Established by the Supreme
              Court's Recent Decision in *National Pork Producers* .......................................... 21

    III.     Certification Under 28 U.S.C. § 1292(b) Is Unwarranted. .................................. 23

    IV.     Plaintiff's Claims Are Not Time-Barred Even Without Section 5-204. ............... 26

CONCLUSION .................................................................................................................... 27

TABLE OF AUTHORITIES

Page(s)

Cases

*Ahrenholz v. Bd. of Trustees of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) .................................................................................. 24

*Aiken v. Alaska Addiction Pros. Ass'n*,
552 P.3d 454 (Alaska 2024) ................................................................................... 11

*Alday v. Tecphy Div. Firminy*,
10 F. Supp. 2d 562 (D.S.C. 1998) ...................................................................... 11, 17

*Allenberg Cotton Co. v. Pittman*,
419 U.S. 20 (1974) .............................................................................................. 7, 10

*Anne Arundel Cnty. v. Bell*,
113 A.3d 639 (Md. 2015) ....................................................................................... 16

*Antietam Battlefield KOA v. Hogan*,
461 F. Supp. 3d 214 (D. Md. 2020) ....................................................................... 18

*Automated Data Sys., Inc. v. Omron Bus. Sys., Inc.*,
760 F. Supp. 541 (W.D.N.C. 1991) ........................................................................ 25

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
591 U.S. 610 (2020) .......................................................................................... 15, 16

*Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*,
486 U.S. 888 (1988) ............................................................................................... 11

*Bottineau Farmers Elevator v. Woodward-Clyde Consultants*,
963 F.2d 1064 (8th Cir. 1992) ............................................................................... 11

*Butler v. DirectSAT USA, LLC*,
307 F.R.D. 445 (D. Md. 2015) ............................................................................... 23

*Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc.*,
368 F.3d 86 (2d Cir. 2004) .................................................................................... 24

*City of New Orleans v. Dukes*,
427 U.S. 297 (1976) ............................................................................................... 20

*Cloverfields Improvement Ass'n, Inc. v. Seabreeze Properties, Inc.*,
373 A.2d 935 (Md. 1977) ............................................................................... 2, 5, 18

*Colon Health Centers of Am., LLC v. Hazel*,
    733 F.3d 535 (4th Cir. 2013) ........................................................................... 17

*Colon Health Centers of Am., LLC v. Hazel*,
    813 F.3d 145 (4th Cir. 2016) ..................................................................... passim

*Dekker v. Vivint Solar, Inc.*,
    542 F. Supp. 3d 959 (N.D. Cal. 2021) ................................................................ 7

*Direct Mktg. Ass'n v. Brohl*,
    814 F.3d 1129 (10th Cir. 2016) ...................................................................... 13

*Eli Lilly & Co. v. Sav-On-Drugs, Inc.*,
    366 U.S. 276 (1961) .................................................................................... passim

*Fannin v. CSX Transp., Inc.*,
    873 F.2d 1438 (4th Cir. 1989) ........................................................................ 23

*FCC v. Beach Commc'ns, Inc.*,
    508 U.S. 307 (1993) ....................................................................................... 18

*Fitch v. Maryland*,
    No. CV PJM 18-2817, 2022 WL 2106101 (D. Md. June 10, 2022) ......................... 23

*G.E.M., Inc. v. Plough, Inc.*,
    180 A.2d 478 (Md. 1962) ................................................................................. 8

*Garber v. Menendez*,
    888 F.3d 839 (6th Cir. 2018) ............................................................... 11, 12, 19

*Goodman v. Praxair, Inc.*,
    494 F.3d 458 (4th Cir. 2007) .......................................................................... 10

*Gregg Dyeing Co. v. Query*,
    286 U.S. 472 (1932) ....................................................................................... 13

*J.C. Snavely & Sons, Inc. v. Wheeler*,
    538 A.2d 324 (Md. Ct. Spec. App. 1988) .......................................................... 6

*Juzwin v. Asbestos Corp., Ltd.*,
    900 F.2d 686 (3d Cir. 1990) ........................................................................... 11

*Keena v. Groupon, Inc.*,
    886 F.3d 360 (4th Cir. 2018) .......................................................................... 23

*Kimmel & Silverman, P.C. v. Porro*,
    969 F. Supp. 2d 46 (D. Mass. 2013) ................................................................. 7

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in*
*Amministrazione Straordinaria*,
921 F.2d 21 (2d Cir. 1990)............................................................................................ 26

*Mallory v. Norfolk S. Ry. Co.*,
600 U.S. 122 (2023)...................................................................................................... 11

*Martinez v. Att'y Gen. United States*,
761 F. App'x 133 (3d Cir. 2019) .................................................................................. 20

*Md. Dig. Copier v. Litig. Logistics, Inc.*,
394 F. Supp. 3d 80 (D.D.C. 2019) ............................................................................... 11

*Menk v. MITRE Corp.*,
No. 1:23-CV-00053-JRR, 2024 WL 327087 (D. Md. Jan. 29, 2024) ............................ 18, 20

*Mohawk Indus., Inc. v. Carpenter*,
558 U.S. 100 (2009)...................................................................................................... 23

*Myles v. Laffitte*,
881 F.2d 125 (4th Cir. 1989) ........................................................................................ 23

*Nat'l Pork Producers Council v. Ross*,
598 U.S. 356 (2023)................................................................................................ 21, 22

*NextEra Energy Cap. Holdings, Inc. v. Lake*,
48 F.4th 306 (5th Cir. 2022) ........................................................................................ 17

*North Dakota v. United States*,
495 U.S. 423 (1990)...................................................................................................... 13

*Obergefell v. Hodges*,
576 U.S. 644 (2015)...................................................................................................... 20

*Occupy Columbia v. Haley*,
738 F.3d 107 (4th Cir. 2013) .......................................................................................... 7

*Park v. Bd. of Liquor License Comm'rs for Baltimore City*,
658 A.2d 687 (Md. 1995) ............................................................................................. 16

*Pike v. Bruce Church, Inc.*,
397 U.S. 137 (1970)................................................................................................ passim

*Potter v. Potter*,
199 F.R.D. 550 (D. Md. 2001).......................................................................................... 8

*Pulte Home Corp. v. Montgomery Cnty., Md.*,
909 F.3d 685 (4th Cir. 2018) ........................................................................................ 18

*Ross v. O'Neal*,
    525 F. App'x 600 (9th Cir. 2013) ............................................... 12

*SEC v. Gruss*,
    No. 11 CIV. 2420, 2012 WL 3306166 (S.D.N.Y. Aug. 13, 2012) .......................... 25

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
    591 U.S. 197 (2020) ......................................................... 15, 17

*Short v. Hartman*,
    87 F.4th 593 (4th Cir. 2023) .................................................... 7

*Smart v. Ashcroft*,
    401 F.3d 119 (2d Cir. 2005) .................................................... 20

*Stein v. Smith*,
    751 A.2d 504 (Md. 2000) .................................................. 2, 4, 14

*Trice v. Oliveri & Assocs., LLC*,
    No. CV GLR-19-3272, 2022 WL 36451 (D. Md. Jan. 4, 2022) ........................... 7

*Turner v. Smalis, Inc.*,
    622 F. Supp. 248 (D. Md. 1985) .......................................... 2, 8, 9, 10

*Tyler v. Gaines Motor Lines, Inc.*,
    245 F. Supp. 2d 730 (D. Md. 2003) ............................................. 11

*Union Brokerage Co. v. Jensen*,
    322 U.S. 202 (1944) ..................................................... 2, 5, 12, 19

*United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*,
    550 U.S. 330 (2007) ......................................................... 19

*United States ex rel. Michaels v. Agape Senior Cmty., Inc.*,
    848 F.3d 330 (4th Cir. 2017) ................................................... 23

*United States v. Miselis*,
    972 F.3d 518 (4th Cir. 2020) ................................................... 15

*Va. Soc'y for Hum. Life, Inc. v. Caldwell*,
    152 F.3d 268 (4th Cir. 1998) ................................................... 17

*W. Lynn Creamery, Inc. v. Healy*,
    512 U.S. 186 (1994) ......................................................... 13

*Willow Grove Citizens Ass'n v. Cnty. Council of Prince George's Cnty.*,
    175 A.3d 852 (Md. Ct. Spec. App. 2017) ...................................... 4, 14

*Wis. Cent. Ltd. v. United States*,
   585 U.S. 274 (2018) ................................................................................................ 20

*Yangming Marine Transp. Corp. v. Revon Prod. U.S.A., Inc.*,
   536 A.2d 633 (Md. 1988) .......................................................................................... 9

Statutes

28 U.S.C. § 1292(b) ....................................................................................... passim

Md. Code Ann., Cts. & Jud. Proc. § 5-204 .................................................. passim

Md. Code Ann., Tax-Prop. § 11-101(a) ............................................................ 2, 4

Md. Gen. Provis. §  1-210(a-b) ............................................................................ 16

Corps. & Ass'ns § 2-102(a) ................................................................................... 3

Corps. & Ass'ns § 2-102(b) ............................................................................. 3, 14

Corps. & Ass'ns § 3-503(c) ................................................................................... 3

Corps. & Ass'ns § 3-503(d) ............................................................................. 4, 14

Corps. & Ass'ns § 3-514(a) ................................................................................... 4

Corps. & Ass'ns § 7-202 ....................................................................................... 3

Corps. & Ass'ns § 7-203 ....................................................................................... 4

Corps. & Ass'ns § 7-301 ................................................................................. 5, 14

Corps. & Ass'ns § 7-304(a) ................................................................................... 3

Corps. & Ass'ns § 7-302(b) ................................................................................... 4

Rules

Fed. R. Civ. P. 11(b)(4) ....................................................................................... 27

Fed. R. Civ. P. 50, 52, 59, or 60 ........................................................................... 8

Rule 11 ................................................................................................................. 27

Rule 12(b)(6) .......................................................................................................... 7

Rule 12(c) ............................................................................................................... 7

Local Rule 105(10) ................................................................................................. 9

Other Authorities

Wright and Miller, 16 Fed. Prac. & Proc. Juris. § 3929 (3d ed.) .................................................... 24

Wright and Miller, 16 Fed. Prac. & Proc. Juris. § 3930 (3d ed.) .................................................... 24

## INTRODUCTION

Ultragenyx's Motion for Judgment on the Pleadings ("Motion") lacks any basis in law or fact. Indeed, to reach its strained reading of Section 5-204 of the Maryland Code on Courts and Judicial Proceedings as violative of the Dormant Commerce Clause, Ultragenyx ignores both Plaintiff's well-pled allegations in his Complaint and binding Supreme Court precedent.

With respect to the facts, and despite Ultragenyx's suggestion, this Court found that Plaintiff plausibly alleges that "Ultragenyx has conducted an array of its core activities in Maryland, including having employees in Maryland, conducting research in Maryland, marketing in Maryland, and contracting with Maryland companies" – all while failing "to register to do business in Maryland." ECF 46 at 16, 18. Put simply, Ultragenyx is not merely "an out-of-state corporation not alleged to have any physical facilities or management functions in Maryland." ECF 57-1 at 7. This matters because, under the settled understanding of Section 5-204, "[a] foreign corporation is required to register to do business in Maryland if, but only if, 'it is doing intrastate business in Maryland.'" ECF 46 at 14 (citations omitted).

On the law, Ultragenyx ignores three things which are fatal to its Dormant Commerce Clause challenge.

**First**, Ultragenyx ignores binding Supreme Court precedent which has upheld the constitutionality of similar statutes. In *Eli Lilly & Co. v. Sav-On-Drugs, Inc.*, 366 U.S. 276 (1961), the Supreme Court held that a State can penalize an out-of-state corporation that fails to register by entirely denying it access to the courts, provided that the corporation was engaged in intrastate business within the State. *Id.* at 279. While the penalty in this case (denial of a statute of limitations defense) differs from the penalty in *Eli Lilly*, "[t]he barring of a litigant from raising a specific defense is, obviously, a less drastic burden on interstate commerce than closing the courthouse

doors completely in its face." *Turner v. Smalis, Inc.*, 622 F. Supp. 248, 254 (D. Md. 1985). Because "[t]he Maryland courts [] have consistently construed [their State's] registration requirement in a fashion that avoids Commerce Clause problems, *i.e.*, as not applying to foreign corporations that are not 'doing business' in Maryland," there is no constitutional problem with Md. Code Ann., Cts. & Jud. Proc. § 5-204. *Id.* at 252.

**Second**, Ultragenyx ignores the fact that Maryland law treats unregistered out-of-state corporations more favorably than unregistered in-state corporations. If a domestic corporation fails to register, Maryland does far more than just take away a specific defense—it instead deems the corporation a "nonentity" and its actions are a "nullity." *Stein v. Smith*, 751 A.2d 504, 506 (Md. 2000). Corporate annihilation is undoubtedly a harsher penalty than barring a litigant from raising a specific defense. This fact too, is fatal to Ultragenyx's argument because "[t]he dormant Commerce Clause is exclusively designed to address the differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Colon Health Centers of Am., LLC v. Hazel*, 813 F.3d 145, 154 (4th Cir. 2016) (internal citations and quotations omitted).

**Third**, Ultragenyx ignores the many current purposes underlying the registration requirement. Corporate registration statutes play an important role in enabling the government to monitor potentially fraudulent conduct. *Union Brokerage Co. v. Jensen*, 322 U.S. 202, 210 (1944) (registration requirements are "a conventional means of assuring responsibility and fair dealing on the part of foreign corporations coming into a State."). In Maryland, the registration requirement also plays an important role in tax enforcement. *Cloverfields Improvement Ass'n, Inc. v. Seabreeze Properties, Inc.*, 373 A.2d 935, 938 (Md. 1977). Registering to do business in Maryland triggers an obligation to file annual tax reports, Md. Code Ann., Tax-Prop. § 11-101(a), and Maryland law allows the State Department of Assessments and Taxation to revoke registrations (both of in- and

out-of-state businesses) for failure to file tax reports. Md. Code Ann., Corps. & Ass'ns § 3-503(c); Md. Code Ann., Corps. & Ass'ns § 7-304(a). This makes the registration system an effective tool of tax enforcement. But, of course, this system only works if there are meaningful consequences for failing to register. Far from being an archaic relic of a bygone era of personal jurisdiction, § 5-204 is instead an important tool for ensuring prompt compliance with Maryland's regulatory and tax systems.

Both the well-pled facts and law are fatal to Ultragenyx's argument. They are also fatal to its request for certification under 28 U.S.C. § 1292(b). To meet its burden to show certification under § 1292(b) is appropriate, Ultragenyx must show there is substantial grounds for a difference of opinion about the constitutionality of § 5-204. There is not. As discussed above, Ultragenyx's argument is (1) blocked by controlling Supreme Court precedent, (2) based on the mistaken belief that Maryland law penalizes out-of-state businesses more harshly than in-state businesses for failing to register, and (3) premised on a misunderstanding of the purposes behind the registration requirement and associated penalties. Accordingly, the Court should deny the Motion.

## **BACKGROUND**

### I.    **The Statutory Scheme Governing Corporate Registration in Maryland**

When a Maryland corporation is chartered, its incorporators file its charter with the State Department of Assessments and Taxation. Md. Code Ann., Corps. & Ass'ns § 2-102(a). It is only when the Department of Assessments and Taxation accepts that filing that a Maryland corporation comes into being. Md. Code Ann., Corps. & Ass'ns § 2-102(b). It is thus not possible for a Maryland corporation to not be registered with the State Department of Assessments and Taxation —Maryland simply does not permit such entities to exist.

Foreign corporations are also required to register with the State Department of Assessments and Taxation if they meet a particular threshold of business in Maryland. Md. Code Ann., Corps.

3

& Ass'ns § 7-202; Md. Code Ann., Corps. & Ass'ns § 7-203. This Court thoroughly outlined the relevant legal standard for whether a corporation is doing sufficient business in Maryland to be required to register in its ruling on Ultragenyx's first motion to dismiss. ECF 46 at 14-18.

Maryland requires all domestic corporations—and any foreign corporation properly registered to do business in Maryland—to file an annual report with the State Department of Assessments and Taxation. Md. Code Ann., Tax-Prop. § 11-101(a). That report requires the filing company to disclose information regarding the property it owns in Maryland. Maryland Department of Assessments and Taxation, *Business Entity Annual Report* (2024), https://dat.maryland.gov/SDAT%20Forms/PPR_Forms/2024Form1_Complete.pdf. By statute, the report is due on April 15, Tax Day. Md. Code Ann., Tax-Prop. § 11-101(a).

If a Maryland corporation fails to file such an annual report, and after a notice period, the State Department of Assessments and Taxation "shall issue a proclamation declaring that the charters of the corporations are repealed, annulled, and forfeited, and the powers conferred by law on the corporations are inoperative, null, and void as of the date of the proclamation, without proceedings of any kind either at law or in equity." Md. Code Ann., Corps. & Ass'ns § 3-503(d). Because of this, an in-state unregistered or forfeited domestic corporation is a "nonentity" and its actions are a "nullity." *Stein v. Smith*, 751 A.2d at 506. It is a crime to continue to transact business in the name of the forfeited corporation. Md. Code Ann., Corps. & Ass'ns § 3-514(a).

Foreign corporations that fail to register or to file an annual report are treated more favorably. As with domestic corporations, it is a crime to operate a foreign corporation required to register without registering. Md. Code Ann., Corps. & Ass'ns § 7-302(b). But unregistered foreign corporations are not "non-entities" like unregistered domestic corporations. *Willow Grove Citizens Ass'n v. Cnty. Council of Prince George's Cnty.*, 175 A.3d 852, 857 (Md. Ct. Spec. App. 2017).

Instead, state law imposes two civil limitations on unregistered foreign corporations. First, it prohibits them from filing suit in Maryland courts. Md. Code Ann., Corps. & Ass'ns § 7-301. Second, it prohibits them from raising a statute of limitations argument if sued under Maryland law. Md. Code Ann., Cts. & Jud. Proc. § 5-204. This latter prohibition applies to all suits under Maryland law, whether brought by a citizen of Maryland or a foreign person. *Id.*

This statutory scheme exists to facilitate tax collection. *Cloverfields Improvement Ass'n*, 373 A.2d at 938. By requiring all Maryland corporations to file annual reports regarding their property ownership in Maryland, and by requiring the same of foreign corporations doing a certain quantum of business in Maryland, Maryland law facilitates the orderly and efficient collection of state property taxes. The registration requirement also serves the purpose of ensuring that regulators know what businesses are doing business in Maryland, which in turn enables them to safeguard against fraud. *Cf. Union Brokerage*, 322 U.S. at 210 (describing value of registration statutes as anti-fraud mechanism).

## II.     Ultragenyx's Ties to Maryland and This Court's Prior Ruling

This Court has taken judicial notice of the fact that Ultragenyx was not registered to do business in Maryland at the time Plaintiff filed the complaint. ECF 46 at 14. The Court has also outlined the Complaint's allegations regarding Ultragenyx's ties to Maryland:

> The company has employees based in Maryland, such as marketing personnel who promote the company's work to Maryland physicians. [ECF 1] ¶ 29. The company conducts research and drug development in Maryland as well. *Id.* ¶¶ 26–28. Ultragenyx has recruited patients for and conducted clinical trials at the National Institutes of Health Clinical Center in Bethesda. *Id.* ¶ 26. Since 2018, Ultragenyx has paid doctors at Johns Hopkins Hospital over $1.1 million for research and consulting. *Id.* ¶ 28. In November 2021, Ultragenyx paid Johns Hopkins University $116,382.39 for a study. *Id.* Ultragenyx's Maryland research and development expenditures include payments for work to commercialize HeLa cells. *Id.* In addition, Ultragenyx partners with Maryland-based pharmaceutical companies on drug development. *Id.* ¶¶ 26–27. For instance, Ultragenyx maintains "a long-standing licensing partnership with Regenxbio, a Maryland corporation with a 132,000-square-foot, $65 million gene therapy manufacturing facility in

5

Rockville." *Id.* ¶ 27. The partnership includes four exclusive worldwide licenses and requires Ultragenyx to pay Regenxbio a range of fees and royalties. *Id.* Ultragenyx also sponsors marketing events at Johns Hopkins Hospital. *Id.* ¶ 26.

*Id.* at 5-6.

Based on Ultragenyx's failure to register, Plaintiff argued at the 12(b)(6) stage that Ultragenyx was barred from raising a statute of limitations defense based on Md. Code Ann., Cts. & Jud. Proc. § 5-204. ECF 21 at 26. Ultragenyx contested whether it was required to register. ECF 37 at 16-18. The Parties agreed as to the relevant legal rule. Both sides agreed that the test for whether Ultragenyx was required to register was set forth in *J.C. Snavely & Sons, Inc. v. Wheeler*, 538 A.2d 324, 327 (Md. Ct. Spec. App. 1988). ECF 21 at 27; ECF 37 at 17. The Parties disagreed, however, about whether Ultragenyx's ties to Maryland met that standard. *Id.* This Court held that Plaintiff had the better of that argument. "Lacks does not allege merely that Ultragenyx conducted a single, 'isolated' act in Maryland. Lacks alleges much more: that since at least 2018, Ultragenyx has conducted an array of its core activities in Maryland, including having employees in Maryland, conducting research in Maryland, marketing in Maryland, and contracting with Maryland companies." ECF 46 at 16. "Under Maryland law, Lacks has plausibly alleged that Ultragenyx, an out-of-state corporation, conducts enough intrastate business to have an obligation to register to do business in Maryland." *Id.* at 18. Ultragenyx attempts to relitigate Plaintiff's well-pled allegations in his Compliant, as well as this Court's prior ruling and decision.

It is worth pausing for a moment here to highlight something noteworthy about Ultragenyx's argument at the 12(b)(6) stage. Ultragenyx made the point that Maryland "restricts this rule [referring to the registration requirement] to parties engaged in substantial *intra*state commerce . . . so as not to violate the Commerce Clause." ECF 37 at 6 (emphasis original). Ultragenyx, of course, disputed that it was alleged to be engaged in substantial intrastate

commerce. *Id.* To develop its argument that the *Snavely* rule was a limiting construction to avoid offending the Commerce Clause, Ultragenyx discussed *Turner* at length, and cited two Supreme Court decisions that *Turner* identified as the basis for the intrastate business rule: *Allenberg Cotton Co. v. Pittman*, 419 U.S. 20 (1974) and *Eli Lilly*, 366 U.S. 276. ECF 37 at 16-17. Ultragenyx does not cite either decision in this motion.

## STANDARD OF REVIEW

Motions under Rule 12(c) are evaluated under the same standard as a motion under Rule 12(b)(6). *Short v. Hartman*, 87 F.4th 593, 603 (4th Cir. 2023). "In resolving a motion pursuant to Rule 12(b)(6) or Rule 12(c), a district court cannot consider matters outside the pleadings without converting the motion into one for summary judgment." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). "A motion for judgment on the pleadings should not be granted unless it appears to a certainty that the non-moving party cannot prove any set of facts in support of its claim that would entitle it to relief." *Trice v. Oliveri & Assocs., LLC*, No. CV GLR-19-3272, 2022 WL 36451, at \*5 (D. Md. Jan. 4, 2022) (internal citations and quotations omitted).

## ARGUMENT

### I.     Ultragenyx's Motion is Untimely Because it is a Disguised Motion for Reconsideration.

As an initial matter, Ultragenyx's motion is procedurally improper. While Rule 12 permits a party to file a motion for judgment on the pleadings after a motion to dismiss, that flexibility does not permit parties to repeat arguments in a 12(c) motion they have already made and lost under 12(b)(6). *Dekker v. Vivint Solar, Inc.*, 542 F. Supp. 3d 959, 967 (N.D. Cal. 2021); *Kimmel & Silverman, P.C. v. Porro*, 969 F. Supp. 2d 46, 50 (D. Mass. 2013). Such motions are treated as disguised motions for reconsideration. *Id.*

7

This rule makes good sense. "Hindsight being perfect, any lawyer can construct a new argument to support a position previously rejected by the court, especially once the court has spelled out its reasoning in an order." *Potter v. Potter*, 199 F.R.D. 550, 553 (D. Md. 2001). "It is hard to imagine a less efficient means to expedite the resolution of cases than to allow the parties unlimited opportunities to seek the same relief simply by conjuring up a new reason to ask for it." *Id.* For this reason, "[w]hen parties file a motion with the court, they are obligated to insure that it is complete with respect to facts, law and advocacy" and if a party loses, "that should end the matter, at least until appeal." *Id.* "Were it otherwise, then there would be no conclusion to motions practice, each motion becoming nothing more than the latest installment in a potentially endless serial that would exhaust the resources of the parties and the court[.]" *Id.*

As discussed above, Ultragenyx raised Dormant Commerce Clause arguments in its 12(b)(6) briefing. It made a choice to argue then that Section 5-204, as interpreted by Maryland caselaw, was in harmony with the Dormant Commerce Clause. ECF 37 at 16-17. The Court was far from inattentive to this argument—in ruling on Ultragenyx's 12(b)(6) motion, the Court cited to multiple cases which discussed the relationship between Section 5-204 and the Commerce Clause, including *Turner*, 622 F. Supp. at 252 and *G.E.M., Inc. v. Plough, Inc.*, 180 A.2d 478, 481 (Md. 1962). ECF 46 at 14-18. It is hardly reasonable for Ultragenyx to complain, as it does here, that the Court "did not address the constitutionality of Section 5-204" in its prior order. ECF 57 at 8. The Court did address Ultragenyx's Dormant Commerce Clause argument, by recognizing that even under the standard set in the decisions Ultragenyx cited, Plaintiff still won. ECF 46 at 14-18. Ultragenyx is not entitled to a mulligan on that ruling.

Since Ultragenyx's motion is a disguised motion for reconsideration, it is untimely. "Except as otherwise provided in Fed. R. Civ. P. 50, 52, 59, or 60, any motion to reconsider any order issued

by the Court shall be filed with the Clerk not later than fourteen (14) days after entry of the order."
Local Rule 105(10). Ultragenyx's motion was filed forty-six days after the Court's ruling on the
motion to dismiss. The Court should, thus, deny the Motion.

II.     **Section 5-204 is Consistent with the Dormant Commerce Clause**

        a.     **Section 5-204 is Constitutional Because it Complies with the Intrastate
               Business Requirement From *Eli Lilly*.**

        "It is well established that [a State] cannot require [a corporation] to get a certificate of
authority to do business in the State if its participation in [] trade is limited to its wholly interstate
sales[.]" *Eli Lilly & Co. v. Sav-On-Drugs, Inc.*, 366 U.S. 276, 278 (1961). "On the other hand, it is
equally well settled that if [a corporation] is engaged in intrastate as well as interstate aspects of []
business, the State can require it to get a certificate of authority to do business." *Id.* at 279. "In
such a situation, [a corporation] could not escape state regulation merely because it is also engaged
in interstate commerce." *Id.* To determine if a corporation is engaged in intrastate business, a court
"must then look to the [factual] record[.]" *Id.*

        If this fact-specific intrastate/interstate analysis sounds familiar, that is because it mirrors
the analysis this Court already conducted to determine that Ultragenyx was engaged in intrastate
business such that it was required to register under state law. *Yangming Marine Transp. Corp. v.
Revon Prod. U.S.A., Inc.*, 536 A.2d 633, 640 (Md. 1988) ("[I]t must be acknowledged that the
Court's construction and applications of the Maryland statutory scheme [for business registration]
in this and prior cases obviously are influenced by constitutional considerations."). "The Maryland
courts [] have consistently construed [their State's] registration requirement in a fashion that avoids
Commerce Clause problems, *i.e.*, as not applying to foreign corporations that are not 'doing
business' in Maryland[.]" *Turner*, 622 F. Supp. at 252. Engaging in this analysis under Maryland
law, this Court correctly determined that "Lacks does not allege merely that Ultragenyx conducted

9

a single, 'isolated' act in Maryland. Lacks alleges much more: that since at least 2018, Ultragenyx has conducted an array of its core activities in Maryland, including having employees in Maryland, conducting research in Maryland, marketing in Maryland, and contracting with Maryland companies." ECF 46 at 16. That analysis was right when the Court conducted it under Maryland law, and is no different under the federal standard that Maryland law is patterned after.

But the Court need not even go that far. As this Court recognized at the motion to dismiss phase, "Lacks need not allege facts anticipating and negating a statute of limitations defense." ECF 46 at 11. Plaintiff has no obligation to "anticipate and negate [Ultragenyx's] statute of limitations defense by plausibly alleging that Ultragenyx does business in Maryland without being registered." *Id.* at 12. Rather, the burden is on Ultragenyx to show that this is "the rare case [where] 'all facts necessary to the affirmative defense clearly appear on the face of the complaint.'" *Id.* at 11 (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)). Ultragenyx has not and cannot do that. The Court may deny the motion based on the standard of review alone.

For reasons that are not entirely clear, Ultragenyx ignores the *Eli Lilly* decision in its brief. But it is controlling—the only significant difference between the issue presented in *Eli Lilly* and the issue presented here is that of the penalty and "[t]he barring of a litigant from raising a specific defense is, obviously, a less drastic burden on interstate commerce than closing the courthouse doors completely in its face." *Turner*, 622 F. Supp. at 254.

It is possible Ultragenyx will argue that *Eli Lilly* has been implicitly overturned by doctrinal developments in Dormant Commerce Clause jurisprudence, like the development of the modern multistep framework for analyzing Dormant Commerce Clause challenges laid out in cases like *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). But the Supreme Court has continued to apply *Eli Lilly*'s simple rule even after the modern framework was developed. *Allenberg Cotton Co.*, 419

U.S. 20. Lower courts have done the same. *Md. Dig. Copier v. Litig. Logistics, Inc.*, 394 F. Supp. 3d 80, 89 (D.D.C. 2019). The latest of those published decisions, by a state Supreme Court, was issued a matter of weeks ago. *Aiken v. Alaska Addiction Pros. Ass'n*, 552 P.3d 454, 468 (Alaska 2024). Moreover, the Supreme Court has cautioned against holding that its precedents are "implicitly overruled" when they are merely "in tension with some other line of decisions" because "the prerogative of overruling its own decisions" is held by the Supreme Court. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) (internal citations and quotations omitted).

Ultragenyx cannot identify a Supreme Court case that overturns *Eli Lilly*. The closest Ultragenyx comes to doing so is its citation to *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888 (1988). But *Bendix* involved an inapposite issue: whether a foreign corporation could be forced to agree to be subject to general personal jurisdiction in a State on penalty of losing its right to assert a statute of limitations defense. *Id.* at 892. As Ultragenyx concedes, Maryland imposes no similar consent to jurisdiction requirement in its registration process. *Tyler v. Gaines Motor Lines, Inc.*, 245 F. Supp. 2d 730, 732 (D. Md. 2003). *Bendix*, and cases applying its holding to similar statutes,[1] have no application here.

Ultragenyx also cites a line of lower court cases that involve statutes which toll the statute of limitations when a defendant (corporate or human) is not physically present in a state, without regard to the intrastate/interstate analysis from *Eli Lilly*.[2] Courts have split about whether such statutes are constitutional. *Compare Garber v. Menendez*, 888 F.3d 839, 840 (6th Cir. 2018)

---

[1] This includes *Juzwin v. Asbestos Corp., Ltd.*, 900 F.2d 686 (3d Cir. 1990).

[2] This includes, along with the authorities cited in main text, *Bottineau Farmers Elevator v. Woodward-Clyde Consultants*, 963 F.2d 1064, 1073 (8th Cir. 1992) and *Alday v. Tecphy Div. Firminy*, 10 F. Supp. 2d 562, 563 (D.S.C. 1998).

(upholding such a statute) *with Ross v. O'Neal*, 525 F. App'x 600, 602 (9th Cir. 2013) (striking

down such a statute). But these statutes present fundamentally different issues than Section 5-204.

Consider the facts of *Garber* and *O'Neal* in turn. In *Garber*, an Ohio doctor moved to Florida

when he retired. *Garber*, 888 F.3d at 841. Several years later, a former patient sued the retired

doctor, citing an Ohio statute that tolls the statute of limitations whenever anyone is outside of the

state of Ohio. *Id.* The doctor argued this punished him for moving to Florida in violation of the

Dormant Commerce Clause. *Id.* The Sixth Circuit rejected this argument and upheld the

constitutionality of the Ohio tolling statute. *Id.* at 840. In contrast, when a famous basketball player

faced a similar situation when sued by a Californian who, citing a similar California statute, argued

that only the time the basketball player had spent in California counted towards the statute of

limitations, the Ninth Circuit reached the opposite conclusion. *O'Neal*, 525 F. App'x at 601. It

would be a burden on interstate commerce, the Ninth Circuit reasoned, to force someone to hang

out in California for years to benefit from the State's statute of limitations. *Id.*

This split of authority has very little to do with this case.[3] The localization of a corporation's

activities in a State gives that State a "special interest" in ensuring appropriate regulation through

registration requirements consistent with "effective administration." *Union Brokerage*, 322 U.S.

at 212. No similar interest is implicated by these physical presence statutes. It is a complete non-

sequitur for Ultragenyx to argue that because Shaquille O'Neal is not perpetually subject to suit in

---

[3] Perhaps the strongest evidence of how inapposite these cases are is that Ultragenyx feels no need to attempt to distinguish the reasoning of *Garber* in its motion, despite quoting the decision at length. If there were a serious argument to be made *Garber* was analogous, Ultragenyx would presumably want to explain why one of the primary authorities it relies upon upheld the constitutionality of the tolling statute it dealt with. *Garber*, 888 F.3d at 840. But it makes no effort to do so.

California, Maryland cannot require foreign corporations to register if they do intrastate business in the State.

The Commerce Clause allows a State to penalize a foreign corporation which fails to register with the State despite doing intrastate business within it. *Eli Lilly*, 366 U.S. at 278. Maryland has complied with this constitutional requirement by building an intrastate business predicate into its registration statutes. Section 5-204 is thus constitutional.

### b. Section 5-204 is Constitutional Because Maryland Law Treats Unregistered Foreign Corporations More Leniently Than Unregistered Domestic Corporations.

Independent of *Eli Lilly*, Ultragenyx's motion fails because it ignores that Maryland law imposes less serious penalties on foreign corporations that fail to register than it imposes on domestic corporations. *Supra*, Background, Section I. This matters because "[t]he dormant Commerce Clause is exclusively designed to address the differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Colon Health*, 813 F.3d at 154 (internal citations and quotations omitted). "For that reason, differential treatment that benefits . . . out-of-state interests is not a violation of the dormant Commerce Clause." *Direct Mktg. Ass'n v. Brohl*, 814 F.3d 1129, 1142 (10th Cir. 2016); *accord North Dakota v. United States*, 495 U.S. 423, 439 (1990) (plurality opinion) ("A regulatory regime which so favors the Federal Government cannot be considered to discriminate against it."). The appropriate level of analysis is the "entire program" of regulation at issue—it is not proper to "analyze separately two parts of an integrated regulation[.]" *W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 201 (1994). "There is no demand in that Constitution that the state shall put its requirements in any one statute. It may distribute them as it sees fit, if the result, taken in its totality, is within the state's constitutional power." *Gregg Dyeing Co. v. Query*, 286 U.S. 472, 480 (1932).

Read within the broader context of Maryland's registration system, Section 5-204 gives favorable treatment to out-of-state corporations, not unfavorable treatment. The need for Section 5-204 only exists because Maryland limits its harshest penalties for non-registration to in-state businesses, who either do not exist in the eyes of the law if they fail to register entirely[4] or whose corporate charters, and thus existence, are subject to revocation if they fail to file annual tax reports.[5] Maryland caselaw confirms that these statutes mean what they say—unregistered domestic corporations are "nonentity" and their actions are a "nullity." *Stein*, 751 A.2d at 506.

Maryland does not impose the penalty of corporate annihilation on out-of-state corporations that fail to register—such businesses do not become "non-entities." *Willow Grove Citizens Ass'n*, 175 A.3d at 857. In contrast, Section 5-204, alongside Md. Code Ann., Corps. & Ass'ns § 7-301, simply remove a foreign corporation's right to sue in Maryland courts until registered and take away a single defense from foreign corporations sued under Maryland law while not registered. The end result is that Maryland law treats out-of-state corporations more favorably than in-state corporations. That is not impermissible discrimination under the Dormant Commerce Clause.

### c. Alternatively, if Section 5-204 Does Facially Discriminate Against Foreign Corporations, Federal and Maryland Severability Principles Require it be Construed to Apply to All Corporations.

Alternatively, if Section 5-204 does facially discriminate against foreign corporations, the appropriate remedy is to alleviate the unequal treatment by reading the statute to apply to both foreign and domestic corporations, not nullifying the statute in its entirety.

---

[4] Md. Code Ann., Corps. & Ass'ns § 2-102(b).

[5] Md. Code Ann., Corps. & Ass'ns § 3-503(d).

"When the constitutional violation is unequal treatment, as it is here, a court theoretically can cure that unequal treatment either by extending the benefits or burdens to the exempted class, or by nullifying the benefits or burdens for all." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 632 (2020) (plurality opinion).[6] "If the statute contains a severability clause, the Court typically severs the discriminatory exception or classification, and thereby extends the relevant statutory benefits or burdens to those previously exempted, rather than nullifying the benefits or burdens for all." *Id.* This approach should be "surgical," obliviating as little of the statute as possible—including, when appropriate, just specific problematic words from the statute. *United States v. Miselis*, 972 F.3d at 541 (internal citations and quotations omitted). It is also strictly a negative power—while a court may disregard portions of an enacted law, it lacks the power to add provisions to the law to fix the constitutional problem. *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 237 (2020).

*Am. Ass'n of Pol. Consultants* provides a useful illustration. In *Am. Ass'n of Pol. Consultants*, a federal statute prohibiting robocalls violated the First Amendment by exempting a particular category of robocalls (efforts to collect debts owed to the government) in a way that discriminated based on the content of the speech at issue. *Am. Ass'n of Pol. Consultants*, 591 U.S. at 618. An industry association for political consultants sued and asked the Court to strike down the prohibition on robocalls entirely, so that the group's members could make robocalls in political campaigns. *Id.* at 617. The Court refused to do so, noting that the statute had a severability clause, so the appropriate remedy was to instead extend the scope of the robocall prohibition to cover government debt collection, not to do away with the provision entirely. *Id.* at 632-635. This did,

---

[6] The Fourth Circuit has recognized this analysis in *Am. Ass'n of Pol. Consultants*, while from a plurality, was supported by a "seven-member majority of the Court" and is thus binding precedent. *United States v. Miselis*, 972 F.3d 518, 542 (4th Cir. 2020).

the Court acknowledged, not give the political consultants the right to make political robocalls they wanted. *Id.* But it fully relieved their legal injury—unequal treatment—while preserving the statute to the greatest extent possible. *Id.* at 634.

Maryland has a general severability clause that applies by default to all statutes.[7] Md. Gen. Provis. § 1-210(a-b). It represents a "codification of the common law principle that courts presume that an enactment is severable unless it appears that the legislative body intended otherwise." *Anne Arundel Cnty. v. Bell*, 113 A.3d 639, 657 n.18 (Md. 2015). In light of that, the appropriate remedy to cure any discrimination created by the fact Section 5-204 is targeted at foreign corporations is to excise the word "foreign" from the statute, following *Am. Ass'n of Pol. Consultants'* instructions. This cures the purported constitutional problem with Section 5-204—the allegedly discriminatory treatment of foreign corporations—while preserving the statute in the main.

Ultragenyx does not directly address the question of severability. The closest it comes to the issue is suggesting that the Court should adopt a limiting construction of Section 5-204 under which the statute does not apply to corporations which are susceptible to long-arm personal jurisdiction. ECF 57 at 17-18. There are numerous problems with this approach. First, it does not cure the purported constitutional deficiency—domestic corporations would still be treated differently than foreign corporations under this construction, though fewer foreign corporations would be subject to differential treatment. Second, it has no basis in Section 5-204's text. Were Section 5-204 a federal statute, that might not be a problem, but the Fourth Circuit has made clear

---

[7] Technically, the severability clause applies to statutes enacted after July 1, 1973. But that date is somewhat misleading because the statute "is essentially a codification of [Maryland's] previous case law"—meaning statutes from before July 1, 1973, are also subject to a default of severability. *Park v. Bd. of Liquor License Comm'rs for Baltimore City*, 658 A.2d 687, 695 (Md. 1995). Section 5-204 was most recently reenacted in 1981, so is subject to both the express text of the general severability clause and to the caselaw establishing the default rule of severability.

that federal courts may not impose limiting constructions on state statutes without grounding those interpretations in statutory text.[8] *Va. Soc'y for Hum. Life, Inc. v. Caldwell*, 152 F.3d 268, 270 (4th Cir. 1998). That goes with double force for severability, where the court's power is solely a negative one to disregard the unconstitutional portions of a statute, not a positive one to add language that might fix the constitutional problem. *Seila*, 591 U.S. at 237. Ultragenyx's alternative interpretation of Section 5-204 is neither appropriate as a limiting construction nor as an approach to severability.

> **d. Section 5-204 Clearly Satisfies *Pike* Balancing, Which In This Context Constitutes Nothing More Than Rational Basis Review.**

Ultragenyx next argues that Section 5-204 is unconstitutional under the balancing framework laid out in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). The *Pike* test states that "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Id.* at 142. The party challenging the constitutionality of a statute under *Pike* bears the burden of showing it is unconstitutional. *Colon Health*, 813 F.3d at 157.

Because the *Pike* test is "fact-bound" the Fourth Circuit has cautioned that it should not generally be conducted on the pleadings, where there is no factual record. *Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 535, 546 (4th Cir. 2013); *accord NextEra Energy Cap. Holdings, Inc. v. Lake*, 48 F.4th 306, 327 (5th Cir. 2022) (observing that *Pike* challenges "typically" require "factual development"). Ultragenyx tries to avoid this limitation by basing its *Pike* challenge solely

---

[8] Ultragenyx's primary authority in support of this limited reading of Section 5-204, *Alday v. Tecphy Div. Firminy*, 10 F. Supp. 2d 562 (D.S.C. 1998), is not inconsistent with that. *Alday* did nothing more than apply a state supreme court decision that had adopted a limiting construction of the tolling statute at issue in that case. *Id.* at 564.

on the notion that Section 5-204 conveys no local benefit. ECF 57 at 17. But that choice comes with a corresponding impact on the standard of review. "In identifying the putative local benefits to be weighed against incidental burdens on interstate commerce, we [] apply a rational basis standard of review." *Colon Health*, 813 F.3d at 156 (internal citations and quotations omitted); *accord Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214, 240 (D. Md. 2020), *affirmed in part, appeal dismissed in part*, No. 20-2311, 2022 WL 1449180 (4th Cir. May 9, 2022) ("The Fourth Circuit has characterized this as a rational basis standard of review."). Rational basis review requires the party challenging the constitutionality of a statute "to negate every conceivable basis which might support the legislation." *Menk v. MITRE Corp.*, No. 1:23-CV-00053-JRR, 2024 WL 327087, at *40 (D. Md. Jan. 29, 2024) (internal citation and quotations omitted). "[I]t is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993). "Choices like those challenged here are not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Pulte Home Corp. v. Montgomery Cnty., Md.*, 909 F.3d 685, 693 (4th Cir. 2018) (internal citations and quotations omitted).

There are at least four rationales for Section 5-204 which satisfy rational basis review.

**Tax Measure**: Maryland caselaw has recognized that the State's corporate registration requirements are a tax measure. *Cloverfields Improvement Ass'n*, 373 A.2d at 938. By requiring businesses to register, and by tying the registration requirement with a requirement to annually report property ownership in Maryland, the State has a convenient and effective means of gathering information about corporate personal property tax liabilities. Further, the tool of revocation of a corporate registration for failure to file annual tax reports provides the State a simple mechanism

it can use to ensure prompt compliance with the reporting requirements. A "convenient and effective way" of financing government operations is a cognizable benefit under the *Pike* test. *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 346 (2007).

**Regulatory Measure**: Registration requirements are "a conventional means of assuring responsibility and fair dealing on the part of foreign corporations coming into a State." *Union Brokerage*, 322 U.S. at 210. They allow the government to monitor what businesses are engaged in intrastate commerce, which in turn, furthers anti-fraud measures conducted by regulators. They also provide the public information about what businesses are doing business in Maryland, which in turn furthers the goal of public transparency.

**Process of Service**: Even in the modern era, registration requirements make it easier for injured persons to identify and serve corporations they wish to sue. *Garber*, 888 F.3d at 846 ("[J]ust because due process no longer stands as a barrier to haling an out-of-state defendant to court does not mean that practical challenges no longer exist."). The existence of a public database listing which corporations are doing business in Maryland makes it easier for a plaintiff injured in Maryland to identify what business is responsible for her injury. The lack of such a registration requirement would force a plaintiff injured in Maryland to engage in an onerous search of the databases of 49 other states to identify the party she needs to sue. Even if it would not be impossible to sue a foreign corporation without it registering within Maryland, is entirely rational for Maryland to require registration to alleviate the burden involved with locating an out-of-state registered agent.

**Personal Jurisdiction:** Ultragenyx concedes that at the time Section 5-204 was enacted, it "served a vital purpose." ECF 57 at 15. "In an era when obtaining jurisdiction over non-resident defendants was impossible, these statutes [referring to statutes like Section 5-204] protected

plaintiffs by preventing limitations on their claims from expiring before they could effectuate the personal, in-state service the common law required." *Id.* at 16. Ultragenyx goes on to argue that Section 5-204 is nonetheless unconstitutional because courts, in its view, are empowered to repeal statutes through *Pike* balancing that are antiquated and in need of updating.

That is wrong. The legislature "alone has the institutional competence, democratic legitimacy, and (most importantly) constitutional authority to revise statutes in light of new social problems and preferences." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). Rational basis review implements this principle by ensuring "courts are not empowered to 'sit as a super legislature to judge the wisdom or desirability of legislative policy determinations.'" *MITRE Corp.*, 2024 WL 327087, at *38 (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)). Part of that limitation is that a litigant challenging the constitutionality of a statute must show that the "statute when enacted was wholly irrational" to prevail on a rational basis review challenge.[9] *Smart v. Ashcroft*, 401 F.3d 119, 123 (2d Cir. 2005); *Martinez v. Att'y Gen. United States*, 761 F. App'x 133, 135 (3d Cir. 2019) (same). Ultragenyx's concession that Section 5-204 "served a vital purpose" at the time it was first enacted is a concession that the law survives rational basis review.

---

[9] Nothing about this is inconsistent with the principle that "new insights and societal understandings can reveal unjustified inequality within our most fundamental institutions that once passed unnoticed and unchallenged." *Obergefell v. Hodges*, 576 U.S. 644, 673 (2015). Ultragenyx's argument here is not that Section 5-204 was always unconstitutional, even though its unconstitutionality had not previously been recognized, because new societal understandings of the nature of corporations have washed away old prejudices that prevented past generations from understanding Section 5-204's discriminatory nature. It is rather that the Dormant Commerce Clause is a license for federal courts to act as legislatures and repeal laws they view as outdated. The former conception of the role of the judiciary does not imply the latter.

**e.   Ultragenyx Ignores the Limits On *Pike* Challenges Established by the Supreme Court's Recent Decision in *National Pork Producers*.**

Because Ultragenyx has premised its *Pike* balancing challenge solely on the notion that Section 5-204 does not convey a local benefit, this Court's analysis need not go further than noting the statute serves several local benefits. However, Ultragenyx's challenge also fails because it ignores two important limitations on *Pike* challenges imposed by the Supreme Court's decision in *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356 (2023).

First, *Nat'l Pork Producers* made clear that there is "no clear line" between "the *Pike* line of cases" and the Court's "core antidiscrimination precedents" *Id.* at 377 (internal citations and quotations omitted). "*Pike* serves to smoke out a hidden protectionism" that may be revealed from examining a law's "practical effects in operation" revealing "purposeful discrimination against out of state businesses." *Id.* at 379 (internal citations and quotations omitted). But that is of no help to a party challenging a law under *Pike* who concedes the law was not motivated by purposeful discrimination. *Id.* Such claims "fall[] well outside *Pike*'s heartland." *Id.* at 380. The same is true of Ultragenyx's challenge here. Ultragenyx affirmatively disclaims any argument Section 5-204 was motivated by protectionist intent—it freely admits the law was motivated by legitimate concerns about personal jurisdiction from the era when it was first adopted. Its challenge thus falls well outside *Pike*'s heartland.[10]

Second, *Nat'l Pork Producers* made clear that a party challenging the constitutionality of a statute under *Pike* "must plead facts plausibly suggesting a substantial harm to interstate

---

[10]   To be sure, *Nat'l Pork Producers* also makes clear it is possible for a genuinely nondiscriminatory law to be invalidated under *Pike*. *Nat'l Pork Producers*, 598 U.S. 356 The cases in which the Court has done so, *Nat'l Pork Producers* explains, typically involve "certain state regulations on instrumentalities of interstate transportation—trucks, trains, and the like." *Id.* at 379 n.2. But that is of no help to Ultragenyx here: this case is not about trains, trucks, or transportation.

commerce; facts that render that outcome a speculative possibility are not enough."[11] *Nat'l Pork Producers*, 598 U.S. at 385 (internal quotations omitted) (plurality opinion). *Nat'l Pork Producers* also shows that this is a demanding standard—it held that pig farmers who (1) alleged that a State regulation would require them to have to spend hundreds of millions of dollars to rebuild their sow housing, (2) alleged that the State regulation would cause them to have to increase their production costs per pig by a little less than 10% and (3) who alleged that almost every hog farmer in the country, not just those in the regulating State, would have to comply with this regulation had not alleged enough to move their claim of a substantial harm to interstate commerce beyond a speculative possibility. *Id.* at 387 (plurality opinion) (rejecting allegations by pork producers as insufficient); *Id.* at 399 (Roberts, C.J., concurring in part and dissenting in part) (describing allegations by pork producers).

What has Ultragenyx done to meet this heavy burden? Nothing. Despite having filed its Answer, Ultragenyx has plead no facts whatsoever in support of its position. That is not enough to satisfy this "threshold requirement" for a *Pike* challenge. *Id.* at 143 (Sotomayor, J., concurring).

Ultimately, Ultragenyx's *Pike* challenge is nothing more than an expression of the company's disagreement on policy grounds with the Maryland legislature's choice to leave Section 5-204 on the books. But such an "unwarranted expansion of the judicial function" is improper. *Colon Health*, 813 F.3d at 155. "[U]nder rational basis review, reasonable debates such as this one are resolved in favor of upholding state laws." *Id.* at 158.

---

[11] While only joined by four Justices, "Part IV–C of Justice Gorsuch's opinion is controlling precedent for purposes of the Court's judgment as to the plaintiffs' *Pike* claim." *Id.* at 403 (Kavanaugh, J., concurring in part and dissenting in part).

### III.    Certification Under 28 U.S.C. § 1292(b) Is Unwarranted.

The Court should deny Ultragenyx's request for certification of an interlocutory appeal under 28 U.S.C. § 1292(b) because none of the statutory preconditions for such an appeal are met.

Certification is only appropriate if there is (1) a controlling question of law, (2) as to which there is a substantial ground for difference of opinion, (3) from which an immediate appeal may materially advance the ultimate termination of the litigation. *Keena v. Groupon, Inc.*, 886 F.3d 360, 362 (4th Cir. 2018). This procedure "should be used sparingly and . . . its requirements must be strictly construed."[12] *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989). "Unless all of the statutory criteria are satisfied, the district court may not and should not certify its order for an immediate appeal under section 1292(b)." *Fitch v. Maryland*, No. CV PJM 18-2817, 2022 WL 2106101, at *2 (D. Md. June 10, 2022) (internal citations and quotations omitted).

None of these requirements are satisfied here. A question of law for purposes of § 1292(b) should be "pure," meaning "an abstract legal issue that the court of appeals can decide quickly and cleanly." *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340 (4th Cir. 2017). There are many questions of law which do not satisfy this standard because they are "heavily freighted with the necessity for factual assessment." *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 452 (D. Md. 2015). Certifying such questions is improper because it "inflict[s] upon courts of appeals an unaccustomed and ill-suited role as factfinders." *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438 (4th Cir. 1989) (unpublished table decision).

---

[12] Ultragenyx quotes language from the Supreme Court's decision in *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009) which it presents as endorsing interlocutory appeals whenever a ruling "involves a new legal question or is of special consequence." *Id.* at 111. Ultragenyx omits that this quote appears in a paragraph discussing the means via which "litigants confronted with a particularly injurious or novel privilege ruling" may appeal such a decision, as well as the fact that the words immediately preceding the language that it quotes are "when a privilege ruling[.]" *Id.* at 110-11. This case does not involve a privilege ruling.

An example helps illustrate this distinction. The interpretation of a written contract is typically a question of law. *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000) (Posner, J.). But the interpretation of a particular contract is not a pure question of law for purposes of § 1292(b) because it requires an appellate court to dive more deeply into the record than is appropriate in an interlocutory appeal. *Id.* "[T]he question of the meaning of a contract, though technically a question of law when there is no other evidence but the written contract itself, is not what the framers of section 1292(b) had in mind[.]" *Id.*

Ultragenyx's Dormant Commerce Clause challenge raises numerous factual issues, including (1) a factual assessment of the nature and scope of its ties to Maryland based on the allegations of the Complaint and (2) the sufficiency of Ultragenyx's allegations (or the lack thereof) regarding the extent of the burden Section 5-204 imposes on interstate commerce. It is thus not a pure question of law for purposes of § 1292(b) appropriate for certification.

The Section 5-204 issue is also not controlling. "Rejection of one theory may not be controlling when another theory remains available that may support the same result." Wright and Miller, 16 Fed. Prac. & Proc. Juris. § 3930 (3d ed.); *accord Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 95 (2d Cir. 2004) (issue not controlling when "at least one alternative basis" for same outcome existed). One reason for this rule is that when review is granted, "the court of appeals will not consider matters not yet ruled upon by the district court." Wright and Miller, 16 Fed. Prac. & Proc. Juris. § 3929 (3d ed.). This means that the court of appeals may find itself unable to resolve an issue on an interlocutory basis if certification is granted as to a single theory.

Section 5-204 is only one of four theories that supports denying Ultragenyx's motion to dismiss on statute of limitations grounds. Even if Plaintiff was unable to rely on Section 5-204,

dismissal on statute of limitations grounds would still be improper because (1) it is not appropriate to take judicial notice of the array of extraneous materials Ultragenyx asks the Court to take notice of, (2) the separate accrual rule permits Plaintiff's claim, and (3) the continuing violations doctrine permits Plaintiff's claim. This Court prudently did not reach those issues in light of its resolution of the Section 5-204 issue. But that, in turn means the Fourth Circuit's resolution of the Section 5-204 issue will not and cannot resolve even the statute of limitations issue in this case. The Section 5-204 issue is thus neither a pure question of law, nor controlling.

There is also not a substantial ground for difference of opinion on the constitutionality of Section 5-204. The Supreme Court has spoken about the constitutionality of similar statutes and held that so long as they are applied to companies doing intrastate business, they are constitutional. *Eli Lilly*, 366 U.S. at 284. Independent of that, Ultragenyx's argument is based on the mistaken belief that Maryland law penalizes out-of-state businesses more harshly than in-state businesses for failing to register and premised on a misunderstanding of the purposes behind the registration requirement and associated penalties. That is simply not enough of a basis to constitute a substantial ground for difference of opinion.

Nor is the material advancement of the litigation requirement satisfied. "[C]lear federal policy weighs against piecemeal appeals and causing courts of appeal to consider the same factual or legal issues in separate appeals." *Automated Data Sys., Inc. v. Omron Bus. Sys., Inc.*, 760 F. Supp. 541, 544 (W.D.N.C. 1991). "[I]t does not normally advance the interests of sound judicial administration or efficiency to have piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case, instead of having the trial judge, who sits alone and is intimately familiar with the whole case, revisit a portion of the case if he or she has erred in part and that portion is overturned following the adjudication of the whole case." *SEC v. Gruss*,

No. 11 CIV. 2420, 2012 WL 3306166, at *2 (S.D.N.Y. Aug. 13, 2012). That is particularly true here, where Ultragenyx's request for § 1292(b) certification is focused on certain fragments of a non-controlling issue, upon which the Supreme Court has already issued a binding decision. Rather than advance resolution, certifying this issue will simply interject delay into these proceedings.[13]

### IV.    Plaintiff's Claims Are Not Time-Barred Even Without Section 5-204.

Ultragenyx is correct to acknowledge that if Section 5-204 is invalid (which it is not), the Court should consider the other arguments presented by the Parties about whether Plaintiff's claim is time-barred. Like Ultragenyx, Plaintiff incorporates by reference its prior briefing on this subject, which Plaintiff respectfully submits fully rebuts Ultragenyx's arguments.

The only new point worth making is that there is significant tension between Ultragenyx's request for judicial notice and its Answer, which denies that many of the events it seeks judicial notice of occurred. For example, Ultragenyx seeks judicial notice of the date when it entered into an agreement with Daiichi Sankyo regarding the licensing of its PCL platform, but denies that any such agreement occurred in its Answer. ECF 55 at ¶ 58. Likewise, Ultragenyx seeks judicial notice of various SEC filings related to its merger with Dimension Therapeutics, Inc., despite denying that such a merger occurred in its Answer. ECF 55 at ¶ 64. Ultragenyx also seeks judicial notice of

---

[13] That delay may be considerable. The median time for the Fourth Circuit to decide an appeal on the merits in a civil case is 12.4 months. *Median Time Intervals in Months for Cases Terminated on the Merits, By Circuit, During the 12-Month Period Ending September 30, 2023*, https://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2023.pdf. Analysis from the Federal Judicial Center suggests that Section 1292(b) appeals take roughly twice as long as a regular appellate case, although that comparison is based on data from a different timeframe and with somewhat different endpoints than the data described in the prior sentence. Emery G. Lee III, et al., *Permissive Interlocutory Appeals, 2013–2019*, Federal Judicial Center (Feb. 2020), https://www.fjc.gov/sites/default/files/materials/13/Permissive%20Interlocutory%20Appeals,%2 02013%E2%80%932019.pdf. This Court is empowered to consider appellate court docket congestion as a factor in its decision to deny certification. *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) (identifying "docket congestion" as relevant consideration).

various patents it possesses on products manufactured with HeLa cells, despite denying any such

patents exist in its Answer. ECF 55 at ¶ 60. By signing its Answer, Ultragenyx and its counsel

represented to the Court that "the denials of factual contentions are warranted on the evidence or,

if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ.

P. 11(b)(4). Plaintiff does not question Ultragenyx's compliance with Rule 11. Rather, these denials

demonstrate that judicial notice would be inappropriate because, by Ultragenyx's admission, there

is a reasonable question about the accuracy of the materials Ultragenyx wishes this Court to take

judicial notice of.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Ultragenyx's Motion for Judgment on

the Pleadings.

DATED: September 6,  2024,

*Kim Parker*

Kim Parker, Esquire
Federal Bar No. 23894
LAW OFFICES OF KIM PARKER, P.A.
2123 Maryland Ave.
Baltimore, MD 21218
Telephone: 410-234-2621
Fax: 443-486-1691
kp@kimparkerlaw.com

Christopher A. Seeger*
Christopher L. Ayers*
Nigel P. Halliday*
Hillary Fidler*
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: 212-584-0700
Fax: 212-584-0799
cseeger@seegerweiss.com
cayers@seegerweiss.com
nhalliday@seegerweiss.com

27

hfidler@seegerweiss.com

Ben Crump*
Nabeha Shaer*
BEN CRUMP LAW, PLLC
633 Pennsylvania Avenue, NW, Floor2
Washington D.C. 20004
Telephone: 860.922.3030
court@bencrump.com
nabeha@bencrump.com

Attorneys for Ron L. Lacks, Personal
Representative of the Estate Of Henrietta
Lacks
*PRO HAC VICE*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this Opposition was served this 6th day of September 2024, on all counsel of record, in accordance with the Court's ECF Filing System.

*Kim Parker*

Kim Parker, Esquire

28