**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**Baltimore Division**

| | |
|---|---|
| Ron L. Lacks, Personal Representative of the Estate of Henrietta Lacks,<br><br>Plaintiff,<br><br>v.<br><br>Ultragenyx Pharmaceutical, Inc.,<br><br>Defendant. | Case No. 1:23-cv-2171 |

**REPLY IN SUPPORT OF**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 3

    I.    Section 5-204 is unconstitutional because it discriminates against foreign corporations regardless of whether they are amenable to long-arm service. ............. 3

        a.    Section 5-204 fails under both tiers of the Commerce Clause analysis. ......... 3

        b.    Limiting Section 5-204 to intrastate commerce does not avoid a Commerce Clause violation. ........................................................................................... 6

    II.    Plaintiff's additional arguments also fail. ................................................. 9

    III.    Absent Section 5-204, Plaintiff's claim is time-barred. ............................ 14

    IV.    Interlocutory review is appropriate if the Court denies Ultragenyx's motion. ........ 15

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Alday v. Tecphy Div. Firminy,*
    10 F. Supp. 2d 562 (D.S.C. 1998) ........................................................................... 13

*Alday v. Tecphy Div. Firminy,*
    182 F.3d 906 (Table), 1999 WL 374124 (4th Cir. 1999) .................................... 13

*Bendix Autolite Corp v. Midwesco Enterprises, Inc.,*
    486 U.S. 888 (1974) ..................................................................................... *passim*

*Allenberg Cotton Co. v. Pittman,*
    419 U.S. 20 (1974) ........................................................................................... 7, 8

*Bendix, Tyler v. Gaines Motor Lines, Inc.,*
    245 F.Supp.2d 730 (D. Md. 2003) ........................................................................ 6

*Beyond Sys., Inc. v. Realtime Gaming Holding Co., LLC,*
    388 Md. 1, 878 A.2d 567 (2005) ........................................................................ 10

*Bozzuto's Inc. v. Frank Kantrowitz & Sons, Inc.,*
    117 N.J. Super. 146 (App. Div. 1971) .................................................................. 9

*Cadles of Grassy Meadows II, L.L.C. ex rel. Olney Sav. Ass'n v. Goldner,*
    No. CIV.A.3:06CV1542-M, 2007 WL 1701839 (N.D. Tex. June 12, 2007) ......................... 1

*Cadles of Grassy Meadows II, L.L.C. v. Goldner, No. CIV.A. 3:06-CV-1542,*
    2010 WL 549883 (N.D. Tex. Feb. 16, 2010) ........................................................ 1

*Chemical Waste Mgmt, Inc. v. Hunt,*
    504 U.S. 334, 342 (1992) ..................................................................................... 4

*Dahnke–Walker Milling Co. v. Bondurant,*
    257 U.S. 282 (1921) ............................................................................................. 7

*Dan Clark Fam. Ltd. P'ship v. Miramontes,*
    193 Cal. App. 4th 219–34 (2011) ......................................................................... 6

*Dedmon v. Falls Prod. Inc.,*
    299 F.2d 173 (5th Cir. 1962) ............................................................................... 6

*Eli Lilly & Co. v. Sav-On-Drugs, Inc.,*
    366 U.S. 276 (1961) ............................................................................................. 8

*Garber v. Menendez,*
    888 F.3d 839 (6th Cir. 2018) ............................................................................. 12

*Gen. Motors Corp. v. Tracy*,
   519 U.S. 278 (1997) ................................................................................ 3

*Goodman v. Archbishop Curley High Sch., Inc.*,
   195 F. Supp. 3d 767 (D. Md. 2016) ...................................................... 15

*Guyton v. J.M. Mfg., Inc.*,
   894 F. Supp. 252 (D.S.C. 1995) ............................................................ 13

*Highway Steel, Inc. v. Dubin*,
   56 Cal. App. 5th 876 (2020) .................................................................. 12

*Jemal's Fairfield Farms, LLC v. Prince George's Cnty.*,
   319 F. Supp. 2d 618 (D. Md. 2004) ........................................................ 4

*Juzwin v. Asbestos Corp.*,
   900 F.2d 686 (3d Cir. 1990) .............................................................. 4, 8

*Kerlin v. Sauceda*,
   263 S.W.3d 920 (Tex.2008) .................................................................... 1

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) .............................................................................. 12

*Kuk v. Nalley*,
   166 P.3d 47–55 (Alaska 2007) ...................................................... 6, 10, 13

*Meyer v. Paschal*,
   330 S.C. 175–84 (1998) ............................................................... 2, 13, 14

*National Pork Producers Council v. Ross*,
   598 U.S. 356 (2023) .............................................................................. 11

*Obergefell v. Hodges*,
   576 U.S. 644–71 (2015) ........................................................................ 11

*Orr v. Orr*,
   374 So. 2d 895 (Ala. Civ. App.) ............................................................ 12

*Papesh v. Am. Nat. Can Co.*,
   177 F.R.D. 344 (D. Md.) ......................................................................... 9

*Phreesia, Inc. v. Certify Glob., Inc., No. DLB-21-678*,
   2022 WL 911207 (D. Md. Mar. 29, 2022) ........................................ 14-15

*Preimesberger v. United States*,
   541 F. Supp. 3d 1046 (E.D. Cal. 2021) .................................................. 9

*Seely v. Illinois-California Exp., Inc.*,
   541 F. Supp. 1307 (D. Nev. 1982) .......................................................... 5

*Sessions v. Morales-Santana,*
    582 U.S. 47 (2017) ........................................................................................ 12

*Shin v. McLaughlin,*
    89 Haw. 1, 967 P.2d 1059 (1998) ................................................................ 13

*Star Sci. Inc. v. Beales,*
    278 F.3d 339 (4th Cir. 2002) .................................................................... 3, 5

*United States v. Carolene Prods. Co.,*
    304 U.S. 144 (1938) ...................................................................................... 11

*Walsh v. Ogorzalek,*
    372 Mass. 271 (1977) .................................................................................... 13

*Yamaha Motor Corp., U.S.A. v. Jim's Motorcycle, Inc.,*
    401 F.3d 560 (4th Cir. 2005) ......................................................................... 3

## Statutes

28 U.S.C. § 1292 .................................................................................................... 15

Md. Code Ann., Cts. & Jud. Proc. § 5-204 (West) ........................................... *passim*

Md. Code Ann., Corps. & Ass'ns § 3-507 (West) .................................................. 11

Md. Code Ann., Corps. & Ass'ns § 1-203 .............................................................. 6

Md. Code Ann., Corps. & Ass'ns § 7-302 .............................................................. 6

Md. Code, Tax-Prop. § 11-101 ................................................................................ 6

## Other

Fed. R. Civ. P. 12 .................................................................................................... 9

# INTRODUCTION

Section 5-204 facially discriminates against foreign corporations to combat a problem that has been solvable through narrower means since 1945. That, constitutionally, is the end of the analysis. Section 5-204 is *per se* invalid.

Plaintiff's brief dodges this straightforward Commerce Clause analysis, and OAG's brief ignores it altogether. But it decides the fate of Section 5-204, just as it has for *less* punitive, otherwise analogous tolling statutes under *Bendix* and its progeny in other states. These cases have recognized that it makes no sense to automatically deprive unregistered foreign corporations that are amenable to long-arm service of a limitations defense. Indeed, "[e]very time that a court has considered a tolling statute similar to the one found unconstitutional by the Supreme Court in *Bendix,* the court has struck down the statute as unconstitutional under the Commerce Clause, whether the nonresident defendant be a corporation or an individual, and whether the statute is on its face discriminatory or neutral." *Cadles of Grassy Meadows II, L.L.C. ex rel. Olney Sav. Ass'n v. Goldner*, No. CIV.A.3:06CV1542-M, 2007 WL 1701839, at *6–7 (N.D. Tex. June 12, 2007) [1] "In fact, the only cases in which courts have chosen not to extend *Bendix* or have distinguished it in some way have been when the state legislatures or courts have limited the tolling statute to apply only if the plaintiff is unable to effectuate service under a long-arm statute." *Id.*

Plaintiff and OAG ask this Court to disregard this binding precedent in favor of a separate line of cases involving "door closing" statutes, which bar foreign corporations doing substantial localized business from suing in a state in which they are not registered. But door closing statutes

---

[1] The Fifth Circuit affirmed but then withdrew its decision and remanded for further proceedings after the Texas Supreme Court decided in *Kerlin v. Sauceda*, 263 S.W.3d 920 (Tex.2008), that the tolling statute did not apply where the defendant was amenable to long-arm service and did business in the state. *See Cadles of Grassy Meadows II, L.L.C. v. Goldner*, No. CIV.A. 3:06-CV-1542, 2010 WL 549883, at *1 (N.D. Tex. Feb. 16, 2010)

1

(which do not involve statutes of limitation) are inherently different from tolling statutes and Section 5-204.  Tolling statutes and Section 5-204 facilitate service on foreign *defendants*, while door closing statutes serve the purpose of ensuring corporate *plaintiffs* are bound by the regulations of the state in which they bring a lawsuit.  And tolling statutes and Section 5-204 both strip a defendant's ability to *defend against* a lawsuit after having been involuntarily haled into a foreign state's courts, whereas door closing statutes simply require that a corporation register before *choosing to initiate* a lawsuit in a state's courts (or pick a different court in which to sue).

Thus, tolling statutes and Section 5-204 work exactly the injustice the South Carolina Supreme Court warned of when it narrowly construed a *less*-punitive tolling statute:

> To construe the tolling statute in the manner urged by the plaintiff would allow suits to be postponed indefinitely, for no good purpose, and to be brought in some cases at the virtually unlimited pleasure of the plaintiff. This is highly prejudicial to the out-of-state defendant. It would allow a plaintiff to defer initiation of a suit until after the witnesses have disappeared or documentary evidence has been lost, prejudices which could not logically have been intended by our Legislature.

*Meyer v. Paschal*, 330 S.C. 175, 183–84 (1998).

That describes this case perfectly.  Construing Section 5-204 in the manner urged by Plaintiff and OAG would allow suits to be postponed indefinitely, for no good purpose, and to be brought at the virtually unlimited pleasure of the plaintiff.  This is not hypothetical—it is happening now in this case.  Even though Ultragenyx was amenable to service, Plaintiff is being allowed to bring a lawsuit more than three years after going on a media tour and even writing a book about his litigation plans, while the last known witnesses to events in 1951 have died.  This is prejudicial to Ultragenyx, as it is to the countless other members of the research community Plaintiff might choose at his pleasure to sue at some future time.  It cannot have been logically intended by the General Assembly.

## ARGUMENT

I. **Section 5-204 is unconstitutional because it discriminates against foreign corporations regardless of whether they are amenable to long-arm service.**

### a. Section 5-204 fails under both tiers of the Commerce Clause analysis.

Plaintiff's and OAG's briefs jump right to (inapposite) analogies, but this Court must start with the Commerce Clause's two-tiered analysis. *Yamaha Motor Corp., U.S.A. v. Jim's Motorcycle, Inc.*, 401 F.3d 560, 567 (4th Cir. 2005) ("Analysis of a dormant Commerce Clause challenge to a state statute proceeds on two tiers, a discrimination tier and an undue burden tier."). To be sure, "there is no clear line separating close cases on which scrutiny [or tier of analysis] should apply." *Id.* (quoting *Wyoming v. Oklahoma*, 502 U.S. 437, 455 n.12) (bracketed portion inserted in *Yamaha*)); Pl. Br. at 21. [2]  But this is not a close case. Section 5-204 facially discriminates, in addition to posing an undue burden. It therefore fails both tiers.

**First**, "[w]hen a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests," the statute is generally struck down "without further inquiry." *Star Sci. Inc. v. Beales*, 278 F.3d 339, 355 (4th Cir. 2002) (quoting *Brown–Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 578–79 (1986)) (internal quotation marks omitted). "Thus, for State statutes that discriminate against interstate commerce, we apply 'a virtually per se rule of invalidity.'" *Id.* (quoting *Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978)). "For a law to survive that scrutiny, the state must prove that the discriminatory law 'is demonstrably justified by a valid factor unrelated to economic protectionism,' and that there are no 'nondiscriminatory alternatives

---

[2] That is not a new point as Plaintiff suggests. Pl. Br. at 21. *See Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 299 n.12 (1997) ("There is, however, no clear line between these two strands of analysis, . . .").

adequate to preserve the local interests at stake.'"  *Jemal's Fairfield Farms, LLC v. Prince George's Cnty.*, 319 F. Supp. 2d 618, 627 (D. Md. 2004) (quoting, respectively, *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 274 (1988), *and Chemical Waste Mgmt., Inc. v. Hunt*, 504 U.S. 334, 342 (1992)).

Here, again, Section 5-204 facially discriminates against interstate commerce because it bars unregistered "foreign corporation[s]" and not equivalent Maryland corporations from raising a limitations defense.  *See Juzwin v. Asbestos Corp.*, 900 F.2d 686, 689 (3d Cir. 1990) ("Because the New Jersey tolling statute applies to out-of-state corporations but not to New Jersey corporations, it comes within the class of statutes that are subject to heightened scrutiny.").  Thus, Section 5-204 is invalid unless there are no "nondiscriminatory alternatives to preserve the local interests at stake."  *Chemical Waste*, 504 U.S. at 342.

Here, this Court has already identified the local interest at stake: "[T]he legislative judgment expressed in § 5-204 is that the unregistered foreign corporation, not having made it easy for a plaintiff to serve it with process, should be completely barred from raising limitations."  ECF 46 at 10 (quoting *Turner v. Smalis*, 622 F. Supp. 248, 254 (D. Md. 1985), aff'd sub nom. *Turner v. Byers*, 813 F.2d 403 (Table) (4th Cir. 1986)).  That interest can be met through narrower means, by limiting Section 5-204's application to instances where a foreign corporation could not be served through long-arm service.  *See, e.g.*, *Juzwin*, 900 F.2d at 690.  Indeed, this case is proof: Plaintiff does not contest that Ultragenyx *did* make service easy by being amenable to long-arm service.  Yet Ultragenyx is being penalized under a law that assumes, wrongly, that serving Ultragenyx must have been difficult because it is an unregistered foreign corporation.  This discriminatory assumption is unnecessary to ensure service in a world of long-arm statutes.  Thus, Section 5-204 is *per se* invalid.

4

**Second**, even if this Court were to proceed to the second tier of the Commerce Clause analysis—which it need not do given *per se* invalidity—the result is the same. Where "a statute does not discriminate against interstate commerce but rather 'regulates evenhandedly and only indirectly affects interstate commerce,' we conduct a fuller analysis—the second tier—involving a balancing test." *Star Sci. Inc. v. Beales*, 278 F.3d 339, 355 (4th Cir. 2002) (quoting *Envtl. Tech. Council v. Sierra Club*, 98 F.3d 774, 785 (4th Cir. 1996), *and Brown–Forman*, 476 U.S. at 579). "In conducting this second-tier analysis, we look to 'whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits.'" *Id.* (quoting *Brown–Forman*, 476 U.S. at 579 (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970))).

Notably, OAG does not even attempt to name a local benefit from Section 5-204, because there are none. Even before *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888, 890 (1988), the "majority view" was that "a foreign corporation or a nonresident individual is entitled to the benefit of the statute of limitation if amenable to service of process during the running of such a statute." *Seely v. Illinois-California Exp., Inc.*, 541 F. Supp. 1307, 1310 (D. Nev. 1982) (citing cases). "This view was adopted because of the expansion of service of process brought about by the adoption of long-arm statutes and decisions of the United States Supreme Court expanding personal jurisdiction of state courts." *Id.* Thus, as the Fifth Circuit explained in 1962 when evaluating a similar Alabama statute,

> [T]he penalty urged by the plaintiff seems inappropriate for promoting compliance with the registration statute. It would operate haphazardly, both as to which violators it would strike and as to how hard it would hit them; and it would in effect give a few lucky plaintiffs a windfall benefit, whereas the violator's offense is not against them but against the state. The general rule is that the mere failure of a foreign corporation to comply with the statutory requirement imposed as a condition of doing business does not preclude it when sued from pleading the statute of limitations when such statute would otherwise be a defense.

*Dedmon v. Falls Prod. Inc.*, 299 F.2d 173, 177 (5th Cir. 1962) (cleaned up).[3]   Section 5-204 is likewise operating haphazardly, giving a lucky plaintiff a potential windfall due to what would be an offense against the State, not Plaintiff.  And, assuming for sake of argument Ultragenyx should have registered with the State of Maryland (which Ultragenyx has not conceded), Maryland law provides a sanction for that.  Corps. & Ass'ns § 7-302(a) (setting a $200 penalty).

Thus, because Section 5-204 provides no local benefit, it is invalid if it imposes *any* burden. It does.  Foreign corporations registering in Maryland must pay an application fee and annual fees (Corps. & Ass'ns § 1-203), they must maintain a registered agent (Corps. & Ass'ns § 7-302(b)(ii)), and they must file annual reports (Md. Code, Tax-Prop. § 11-101).  More broadly, Section 5-204 forces foreign corporations to hedge their bets by registering in Maryland—whether required to or not—because, absent registration, they may, like Ultragenyx, be unable to challenge a time-barred claim at the pleadings stage. Even if these burdens do not also include the burden of general jurisdiction at issue in *Bendix*, *Tyler v. Gaines Motor Lines, Inc.*, 245 F.Supp.2d 730, 732 (D. Md. 2003), they still outweigh the absence of a local benefit from Section 5-204.

### b.  Limiting Section 5-204 to intrastate commerce does not avoid a Commerce Clause violation.

OAG and Plaintiff argue this Court should disregard *Bendix* and other cases involving tolling statutes in favor of a different line of cases involving "door closing" statutes—i.e., statutes that require a plaintiff corporation engaged in intrastate commerce to register before bringing a

---

[3] *See also, e.g.*, *Dan Clark Fam. Ltd. P'ship v. Miramontes*, 193 Cal. App. 4th 219, 233–34 (2011) ("[N]either can California justify its statute, since it, too, has a long-arm statute that would permit service on foreign defendants like the Miramonteses.") (citing *Bendix*); *Kuk v. Nalley*, 166 P.3d 47, 54–55 (Alaska 2007) ("To apply the tolling statute to a situation where the defendant is at all times amenable to service is repugnant to the general purposes of statutes of limitations.") (quoting *Byrne v. Ogle*, 488 P.2d 716 (Alaska 1971)).

lawsuit in the state.  OAG hangs its position on a citation in *Bendix* to a pair of cases:  *Dahnke–Walker Milling Co. v. Bondurant*, 257 U.S. 282 (1921), and *Allenberg Cotton Co. v. Pittman*, 419 U.S. 20 (1974).  *See Bendix*, 486 U.S. at 893 ("The State may not condition the exercise of the defense on the waiver or relinquishment of rights that the foreign corporation would otherwise retain. *Cf. Dahnke–Walker Milling Co. v. Bondurant*, 257 U.S. 282, 42 S.Ct. 106, 66 L.Ed. 239 (1921); *Allenberg Cotton Co. v. Pittman*, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974).").  OAG focuses on *Allenberg*, which involved a Tennessee cotton merchant who successfully challenged a Mississippi statute requiring all corporations doing business in the state—i.e., not just foreign corporations—to register with the state before filing suit because the merchant's business was exclusively interstate in character.  419 U.S. at 33.  OAG sees this as confirmation that states can enact statutes like Section 5-204 so long as they withhold limitations defenses from only those foreign corporations who are doing localized business in the state.  OAG Br. 8.

    This citation cannot do that much work.  If OAG were correct that limitations defenses can be automatically withheld from corporations that engage in substantial localized business, then *Bendix* itself—and all its progeny—were wrongly decided.  In none of those cases did the courts consider whether the unregistered foreign corporations were conducting localized business or whether the statutes at issue could be saved by construing them in that way.  Instead, the Court wrote in *Bendix*, "Where a State denies ordinary legal defenses or like privileges to out-of-state persons or corporations *engaged in commerce*, the state law will be reviewed under the Commerce Clause to determine whether the denial is discriminatory on its face or an impermissible burden on commerce." *Id.* (emphasis added).  The Court did not say "unless the commerce involves a substantial amount of localized business."  Rather, the Court was likely citing *Dahnke-Walker* and *Allenberg* for the point that foreign corporations' legal rights are not to be taken away lightly.

After all, in both cases, the Supreme Court *rejected* attempts to limit foreign corporations' rights, in both instances to enforce contracts. *See, respectively,* 257 U.S. at 292, *and* 419 U.S. at 33-34.

Plaintiff and OAG also rely on other door closing cases, including the Supreme Court's 1961 decision in *Eli Lilly & Co. v. Sav-On-Drugs, Inc.*, which held that a state was permitted to require that a foreign corporation doing localized business in a state first register before bringing suit in the state's courts. 366 U.S. 276 (1961). Plaintiff and OAG suggest that these door-closing statutes are "similar" to Section 5-204, while tolling statutes are "inapposite." This is wrong for several reasons.

**First**, and most obviously, tolling statutes and Section 5-204 involve statutes of limitations, while door closing statutes do not. Section 5-204 is simply a more extreme version of the tolling statutes rejected in *Bendix* and *Juzwin*. Whereas those statutes tolled the statute of limitations during the period a corporation was unregistered, Section 5-204 bars a limitations defense altogether. There is a good reason to distinguish between the ability of a foreign defendant to defend against a suit and the ability of a would-be plaintiff to affirmatively bring suit in a foreign court: the defendant has been unwillingly haled into court, whereas the plaintiff has affirmatively sought to take advantage of the state's legal system.

**Second**, tolling statutes and Section 5-204 exist for the same purpose: promoting the ability to serve foreign corporations. 900 F.2d at 690-91; ECF 46 at 10 (quoting *Turner v. Smalis*, 622 F. Supp. 248, 254 (D. Md. 1985), aff'd sub nom. *Turner v. Byers*, 813 F.2d 403 (Table) (4th Cir. 1986)).[4] Door closing statutes exist for a different purpose: ensuring corporations using state

---

[4] Though *Turner* limited Section 5-204's application to intrastate commerce, *Turner* expressly declined to address whether that made Section 5-204 constitutional. *Id.* ("[T]he constitutional question need not be answered under the facts of this case."). To the contrary, *Turner* simply noted that Section 5-204 could not apply to interstate commerce (despite the statute's express language)

courts are subject to state regulations. *See Bozzuto's Inc. v. Frank Kantrowitz & Sons, Inc.*, 117 N.J. Super. 146, 148-50 (App. Div. 1971) (interpreting a later version of the statute from *Eli Lilly* and explaining its legislative intent was that, "to sue in our courts, domestic or qualifying foreign corporations must submit themselves to certain disabilities and obligations"). Thus, the Commerce Clause analysis—both tiers of which consider the purpose of the statute—is the same for Section 5-204 as tolling statutes but different for Section 5-204 and door closing statutes.

## II.    Plaintiff's additional arguments also fail.

Plaintiff also makes a series of other arguments that OAG does not raise, all of which fail.

**First**, Plaintiff argues that the Court should not consider the constitutionality of Section 5-204 because Ultragenyx's motion should be seen as one for reconsideration.  On the one hand, Plaintiff seems to claim that Ultragenyx's Commerce Clause challenge was already "made and lost under 12(b)(6)."  Pl. Opp. at 7.  On the other hand, Plaintiff says that Ultragenyx's 12(b)(6) briefing "argue[d] . . . that Section 5-204, as interpreted by Maryland caselaw, was in harmony with the Dormant Commerce Clause."  Pl. Opp. at 8.  Neither of these contradictory positions are accurate.  Ultragenyx's 12(b)(6) brief argued that Plaintiff had failed to allege facts that would trigger the application of Section 5-204 as this Court construed it in *Turner v. Smalis*.  ECF 37 at 12-13.  And the Court's ruling did not consider a Commerce Clause challenge, one way or another. In any case, a Rule 12(b)(6) defense (which includes a limitations defense[5]) cannot be waived and can be raised through Rule 12(c).  Fed. R. Civ. P. 12(h)(2)(B).[6]

---

without *per se* violating the Commerce Clause, and the Court then held that the defendant was not alleged to have engaged in facts constituting intrastate commerce.  *Id.*

[5] *Papesh v. Am. Nat. Can Co.*, 177 F.R.D. 344, 345 (D. Md.), *aff'd sub nom. Papesh v. Am. Nat'l Can Co.*, 129 F.3d 117 (4th Cir. 1997).

[6] Even if Ultragenyx's current motion simply repeated arguments from its 12(b)(6) motion, which it does not, denial on that basis would be inappropriate.  This motion is made at an early date and

**Second,** Plaintiff's *Pike* balancing argument lists general benefits from corporate registration like taxation, combatting fraud, and personal jurisdiction. Pl. Br. at 19-20. But this Court has again already identified the interest behind Section 5-204, and it is in promoting the ability to serve foreign corporations with process. ECF 46 at 10. The question under *Pike* is simply whether Section 5-204 poses an undue burden in relation to *that* local benefit. Because that benefit vanished when Maryland enacted a long-arm statute in response to *International Shoe*, it does. *Beyond Sys., Inc. v. Realtime Gaming Holding Co.*, LLC, 388 Md. 1, 17, 878 A.2d 567, 577 (2005) (Maryland's long-arm statute enacted in 1964).

**Third,** Plaintiff argues that Section 5-204, having once been rational, cannot now be found irrational. Pl. Br. at 19-20. Tellingly, Plaintiff does not contest that the purpose behind Section 5-204 no longer exists, only whether *a court* can make that determination. *Id.* But that is exactly what happened in every one of the tolling statute cases, including *Bendix*. *See, e.g.*, *Bendix*, 486 U.S. at 891 ("We choose, however, to assess the interests of the State, to demonstrate that its legitimate sphere of regulation is not much advanced by the statute while interstate commerce is subject to substantial restraints."); *Kuk v. Nalley*, 166 P.3d 47, 51 (Alaska 2007) ("[T]he premise of the tolling statute is that a defendant's personal absence from the jurisdiction makes service on the defendant either impossible or difficult and this makes commencement or maintenance of a suit against the defendant likewise impossible or difficult. This premise was once valid. But the shift in personal jurisdiction jurisprudence effectuated by *International Shoe Co. v. Washington* and its progeny have made the premise of the statute no longer valid in most cases."). And

---

will not delay trial. And if this motion is successful, it is better to make that determination now and not after resources are consumed litigating a time-barred claim due to an unconstitutional statute. *See Preimesberger v. United States*, 541 F. Supp. 3d 1046, 1051 (E.D. Cal. 2021) (entertaining a Rule 12(c) motion even though it was properly construed as motion for reconsideration).

changed circumstances can certainly be considered as part of a rational basis review.  *United States v. Carolene Prods. Co.*, 304 U.S. 144, 153 (1938) ("[T]he constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that those facts have ceased to exist.").  A court may find that a law, once seen as rational, has become irrational.  *See, e.g., Obergefell v. Hodges*, 576 U.S. 644, 670–71 (2015) ("The limitation of marriage to opposite-sex couples may long have seemed natural and just, but its inconsistency with the central meaning of the fundamental right to marry is now manifest.").

**Fourth,** Plaintiff cites the Supreme Court's decision in *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023), suggesting Ultragenyx needed to plead facts in support of a challenge to Section 5-204.  Pl. Br. at 21.  But *National Pork Producers* involved an affirmative lawsuit to challenge a statute under the Commerce Clause, and a question of whether the petitioners met the 12(b)(6) pleading standard.  598 U.S. at 367.  That is not at issue here; Ultragenyx is the defendant in this case and has not sued to challenge Section 5-204.  Nor is any factual development necessary, because courts including the Supreme Court in *Bendix* have already determined that analogous tolling statues provide no local benefit where a foreign company is amenable to service.

**Fifth**, Plaintiff argues that Section 5-204 does not discriminate because it is balanced out by other Maryland statutes that penalize unregistered domestic corporations.  This compares apples to oranges.  Putting aside that neither *Bendix* nor its progeny have considered whether other statutes provide a counterbalance, a Maryland company can easily un-annihilate itself by taking statutory steps to cure (Md. Code Ann., Corps. & Ass'ns § 3-507)—and there is no equivalent provision for Section 5-204.  Also, the fact that Maryland does not impose "corporate annihilation" on unregistered foreign corporations (Pl. Br. at 14) is meaningless, because unregistered foreign corporations are not Maryland corporations to begin with and cannot be annihilated.

**Sixth**, and finally, Plaintiff argues that, if Section 5-204 is discriminatory, it can be saved by excising the word "foreign" such that unregistered domestic corporations would also be barred from raising limitations defenses. But expanding the scope of a statute is the province of the legislative branch. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.") (citations omitted). A court, facing an equal protection infirmity, has "two remedial alternatives." *Sessions v. Morales-Santana*, 582 U.S. 47, 72 (2017) (cleaned up). It "may either declare the statute a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by exclusion." *Id.* (cleaned up). The latter option is not available here, because foreign corporations are the only aggrieved party. Unsurprisingly, domestic corporations are not clamoring to also be barred from limitations protection to solve a problem the Supreme Court ended in 1945.[7]

This argument also runs head-first into *Bendix*, which rejected a facially neutral tolling statute under the Commerce Clause. If facial neutrality did not save the statute in *Bendix*, then making Section 5-204 facially neutral would not save it either.[8] Again, *Bendix* and its progeny saw that, where a foreign defendant is amenable to service, it would be illogical to restrict access to a limitations defense. Extending this illogic to domestic corporations would solve nothing.

---

[7] *Compare Morales-Santana*, 582 U. S. at 77 (removing an exception that lessened the burden for children of unwed U.S.-citizen mothers versus those born to unwed U.S.-citizen fathers), *or Orr v. Orr*, 374 So. 2d 895, 896 (Ala. Civ. App.), *writ denied sub nom. Ex parte Orr*, 374 So. 2d 898 (Ala. 1979) (extending alimony obligations to women at the behest of a male petitioner).

[8] To be sure, Ohio's facially neutral tolling statute survived in *Garber v. Menendez*, 888 F.3d 839 (6th Cir. 2018), when applied to an out-of-state individual (as opposed to an unregistered foreign corporation in *Bendix*). This portion of *Garber* appears to be at odds with *Bendix*. *See Highway Steel, Inc. v. Dubin*, 56 Cal. App. 5th 876, 891 (2020) (declining to follow *Garber* as inconsistent with *Bendix* and also noting *Garber* conflated the two tiers of the Commerce Clause analysis).

Rather than excising the word "foreign," the better move would simply be to construe that word to apply only to foreign corporations that could not be served with process.  Several courts have taken this approach.  *See Shin v. McLaughlin*, 89 Haw. 1, 4, 967 P.2d 1059, 1062 (1998) (citing cases and construing the term "out of state" to mean only defendants who cannot be served with process); *Kuk*, 166 P.3d at 52 (same); *Walsh v. Ogorzalek*, 372 Mass. 271, 274 (1977) (same); *Meyer v. Paschal*, 330 S.C. 175, 183-84 (1998) (same).

The Fourth Circuit appears to have already sanctioned this approach.  In *Alday v. Tecphy Div. Firminy*, the U.S. District Court for the District of South Carolina construed a tolling statute in exactly this manner.  10 F. Supp. 2d 562, 564-65 (D.S.C. 1998), *aff'd*, 182 F.3d 906 (4th Cir. 1999).  The court had already ruled three years earlier that the tolling statute violated the Commerce Clause "because the South Carolina long-arm statute would have permitted service on Defendants throughout the period of limitations." *Guyton v. J.M. Mfg., Inc.*, 894 F. Supp. 252, 255 (D.S.C. 1995).  The South Carolina Supreme Court, meanwhile, had ruled that the tolling statute was "inapplicable when the nonresident defendant is amenable to personal service of process." *Meyer*, 330 S.C. at 184.  Citing both these decisions, the district court in *Alday* ruled that "the limitations period may be tolled when the name and location of the defendant is not known to plaintiff and is not able to be discovered by reasonable methods before the statute of limitations runs," and then denied tolling because the defendant had been amenable to service.  10 F. Supp. 2d at 564-65.  The Fourth Circuit affirmed.  182 F.3d 906 (table) (4th Cir. 1999).

This is the only approach that makes sense and meets the purpose behind Section 5-204 and tolling statutes.  As the South Carolina Supreme Court explained in *Meyer*,

> The purpose of the tolling statute is served when the long-arm statute or substitute service statute brings the defendant within the personal jurisdiction of the court. Under these circumstances, the tolling statute is inapplicable because the need to delay the running of the

> statute of limitations no longer exists. Under this construction, the
> purposes of all the provisions are served.

330 S.C. at 183-84. Likewise, limiting the term "foreign" to defendants who could not be served

would meet Section 5-204's purpose, while also complying with the Constitution.

### III.    Absent Section 5-204, Plaintiff's claim is time-barred.

Plaintiff does not contest the extraordinary record that shows he waited more than three

years to bring this lawsuit. Nor can he; more than three years before his complaint, he went on

media tours and even published a book about the litigation he wanted to file.

As to the extensive public record of judicially noticeable materials showing Ultragenyx's

HeLa access also began more than three years ago, Plaintiff misconstrues various responses in

Ultragenyx's Answer. Ultragenyx denied various allegations in Plaintiff's Complaint because they

were false as written. For example, Paragraph 64 of the Complaint alleged that "Ultragenyx

acquired Dimension Therapeutics to obtain AAV-based gene therapy manufacturing technology."

That allegation is false because Ultragenyx did not acquire Dimension solely or even primarily to

obtain that technology. But this is also irrelevant to the limitations issue. As explained in

Ultragenyx's 12(c) motion, Ultragenyx did acquire Dimension, which had been working with

HeLa cells, all of which is recorded in SEC filings that are subject to judicial notice.

Finally, Plaintiff cannot avoid the time-bar through either the continuing violation or

separate accrual doctrines. The Court has already rejected Plaintiff's profits-based theory of unjust

enrichment and ruled that it was the alleged *conferral* of HeLa cells that could give rise to an unjust

enrichment claim here, and that conferral is not a continuing event. ECF 46 at 60, 65.

Additionally, these doctrines apply to illegal conduct, and Ultragenyx is not accused of breaking

any law. *Phreesia, Inc. v. Certify Glob., Inc.*, No. DLB-21-678, 2022 WL 911207, at *9 (D. Md.

Mar. 29, 2022) ("This separate-accrual approach to computing the limitations period is appropriate

where '*the law forbids* a discrete act, . . .'") (emphasis added) (quoting *Blake v. JP Morgan Chase Bank NA*, 927 F.3d 701, 706 (3d Cir. 2019)).

## IV.    Interlocutory review is appropriate if the Court denies Ultragenyx's motion.

Plaintiff's and OAG's briefs only bolster the case for interlocutory review if the Court denies Ultragenyx's motion.  Both briefs argue that Section 5-204 is more analogous to door closing statutes than to tolling statutes.  This is a pure point of law for which OAG is relying on a "cf." citation in *Bendix*, OAG Br. at 8, and Plaintiff is relying on case law predating *Bendix* by two decades, Pl. Br. at 11.  Indeed, Plaintiff seems to believe there is tension between *Bendix* and *Eli Lilly*.  Pl. Br. at 11.  There is not, for reasons explained above.  But if there is, then the question of which strand of caselaw governs would be a question of law as to which there is a substantial ground for difference of opinion. 28 U.S.C. § 1292(b); *see also Goodman v. Archbishop Curley High Sch., Inc.*, 195 F. Supp. 3d 767, 774 (D. Md. 2016) (explaining that "a substantial ground for difference of opinion" exists where "courts themselves disagree as to what the law is") (internal quotation marks omitted).  And that question of law would be controlling, because as explained in Part III above, if the statute of limitations applies, Plaintiff's claim is time-barred.  Resolution of this question now, before resources are expended on litigation due to an unconstitutional statute, is in everyone's interest.

## CONCLUSION

Section 5-204 cannot be used to deny Ultragenyx a basic legal protection, because Ultragenyx was easily served.  Either Section 5-204 is invalid, or it must be construed to apply only to unregistered foreign corporations that could not be served.  Either way, Ultragenyx must be permitted to raise a limitations defense, which here is dispositive.  The 12(c) motion should be granted.

Respectfully submitted,

/s/ *Tonya Kelly Cronin*

Tonya Kelly Cronin (Bar No. 27166)
BAKER DONELSON
100 Light Street
Baltimore, MD 20001
Tel.:410-862-1049
tykelly@bakerdonelson.com

Andrew T. George (Fed. Bar No. 18755)
BOURELLY, GEORGE + BRODEY PLLC
1050 30th Street, NW
Washington, DC 20007
Tel.: 202-341-8805
andrew.george@bgblawyers.com

Nadira Clarke (Fed. Bar No. 20254)
Jo-Ann Tamila Sagar (admitted pro hac vice)
HOGAN LOVELLS
555 13th Street, NW
Washington, DC 20004
Tel: 202-637-5600
nadira.clarke@hoganlovells.com

*Attorneys for Defendant Ultragenyx*
*Pharmaceutical, Inc.*

16